The judgment of the United States Customs Court is *reversed*.

United States v. Sears, Roebuck & Co., Butler Bros., Dayton Co. (No. 3908)[1]

United States Court of Customs and Patent Appeals, March 2, 1936

[1] T. D. 48209.

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *John F. Kavanagh*, special attorney, of counsel), for the United States.

*James R. Ryan* for appellees.

[Oral argument February 6, 1936, by Mr. Lawrence; submitted on brief by appellees]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The importers made eight entries of merchandise at the ports of Dallas, Tex., Seattle, Wash., Chicago, Ill., and Minneapolis, Minn. The articles were in each case classified for duty as toys under paragraph 1513 of the Tariff Act of 1930, and were claimed by protest to be dutiable under paragraph 1541 of said act, as musical instruments.

In protest 551466–G, there was an alternative claim as nonenumerated manufactured or unmanufactured articles under paragraph 1558 of said act. No reliance is placed on said claim under paragraph 1558, and it will not be further considered. The only question for consideration is whether the goods should be classified as toys or as musical instruments. Said paragraphs 1513 and 1541 are, in part, as follows:

PAR. 1513. Dolls and doll clothing, composed in any part, however small, of any of the laces, fabrics, embroideries, or other materials or articles provided for in paragraph 1529 (a), 90 per centum ad valorem; dolls and toys, composed wholly or in chief value of any product provided for in paragraph 31, having any movable member or part, 1 cent each and 60 per centum ad valorem; not having any movable member or part, 1 cent each and 50 per centum ad valorem * * *. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

PAR. 1541 (a). Musical instruments and parts thereof, not specially provided for, * * * all the foregoing, 40 per centum ad valorem * * *.

The various protests were consolidated below for trial and decision. The United States Customs Court overruled protest 709621–G and sustained the protests as to the remaining articles, known in the record as Exhibits 1, 2, 3, 4, 5, 6, 8, 9, and 10. From the resulting judgment the Government has appealed.

Of the various articles imported, protest 709621–G included accordions. This protest was overruled by the trial court, but appeal was taken therefrom in error by the Government, and upon the trial here the Government moved to dismiss the appeal as to this protest.

The articles which were held by the trial court to be dutiable as musical instruments are as follows, as shown by the samples before us:

Exhibit 1 was, before it was broken, an article made in representation of a slide trombone, and having the general shape of a slide trombone, consisting of several lengths of metallic tubing about one-half inch in diameter, with a stationary brass mouthpiece and a bell and movable slide. At intervals along the slide portion are metal reeds which are caused to vibrate by air blown into the mouthpiece. A diatonic scale of one octave can be played, by moving the slide to various positions in the tubing.

Exhibit 2 is an article designated as a saxophone, having eight spring lever keys arranged along its front side. The general shape of the tube is that of the ordinary saxophone. There is a mouthpiece of wood, with no reed at that place. Air is blown into the instrument and by lifting the various keys in the front of the instrument the air passes through reeds, causing them to vibrate and emit musical tones.

Exhibit 3 is an instrument made in the shape of a small sized accordion. The bellows is made of paper, and the frame of thin metal and cardboard. There are ten keys with metallic reeds on one side of the instrument and two on the other side. These twelve keys, when pressed, and the bellows operated, cause musical tones arranged in a diatonic scale to be emitted.

Exhibit 4 is in the form of a slide trombone, with irremovable mouthpiece and a slide which emits musical tones caused by blowing air through a number of reeds arranged in the tubing.

Exhibit 5 is a straight trumpet-shaped instrument, with eight valves on one side, each of which valves has a lever and spring action, and by operation of which air blown through the instrument will cause reeds in the valves to vibrate and emit musical tores which are also diatonically arranged.

Exhibit 6 is an instrument in the form of a saxophone, and is arranged and operated similarly to Exhibit 2.

Exhibit 8 is in the form of a trumpet, with eight valves mounted upon the side, which emit musical, diatonically arranged, tones when pressed, the tone being caused by metal reeds which are caused to vibrate by air blown through the instrument.

Exhibit 9 is a small article in the general form of a slide trombone, operated in the same fashion as Exhibit 1.

Exhibit 10 is designated as a flute. It is composed of tin, is about ten inches in length, has a beveled mouthpiece of wood and six circular holes in the top surface of the instrument. By blowing through the mouthpiece and by fingering these holes, eight diatonic tones can be produced.

These articles are all constructed in a cheap and flimsy manner and sell for small sums. Half tones are absent in their construction, and they are not constructed in the same manner as the instruments which they are supposed to represent. The tones which they emit are in the scale of C major. They are not susceptible of being tuned.

Webster's New Unabridged Dictionary thus defines the words "saxophone," "accordion," "trumpet," "trombone," and "flute":

*saxophone* n. A wind instrument combining the reed mouthpiece of a clarinet with a bent conical tube of metal, equipped with finger keys. It is made in several sizes, and used esp. in military bands.

*accordion* n. A small, portable, keyed wind instrument, in which the wind is forced upon free metallic reeds by means of a bellows.

*trumpet* n. A wind instrument consisting of a long metallic tube, commonly once or twice curved, with cup-shaped mouthpiece, and ending in a bell. It is typical of the well-known and ancient family of instruments giving their tones by the vibration of the player's lips against the mouthpiece of a long tube. Besides its fundamental tone, a series of harmonics can be produced by varying the force of blowing and the embouchure. Other tones are variously secured, as by means of finger holes and keys, as in the obsolete key bugle and serpent; of a slide, as in the trombone; or of valves, as in the modern cornet-a-pistons, which last give easily all the scale tones of its compass, though with some loss of purity.

*trombone* n. A powerful brass instrument of the trumpet kind, thought by some to be the ancient sackbut, consisting of a tube in three parts, bent twice upon itself and ending in a bell. The middle part, bent double, slips into the outer parts, as in a telescope, so that by change of the vibrating length any tone within the compass of the instrument (which may be bass or tenor or alto or even, in rare instances, soprano) is commanded. It can slide from note to note as smoothly as a violin. Softly blown, it has a rich and mellow sound.

*flute* n. A wind instrument consisting of a hollow cylinder or pipe, with holes along its length, stopped by the fingers or by keys which are opened by the fingers. Ancient and medieval flutes had conical tubes blown directly through a mouthpiece at the upper end. The modern flute is closed at the upper end, and blown with the mouth at a lateral hole. The improved model invented by Boehm in 1832 is cylindrical, and its fingering is simplified by a system of rings and levers combined with the keys. Its tones are smooth, sweet, and full in the lower register, brilliant or shrill in the higher. Its compass is about three octaves above middle C.

It will be noted, therefore, that none of these articles, except the flutes and accordions, comes within the common meaning of the names by which the importers designate them. As to these flutes and accordions, the evidence shows that they do not have the same number of keys and openings as the flutes and accordions commonly used by musicians.

Many witnesses were called and examined on the trial of these consolidated protests. It would unduly prolong this opinion to attempt to give here a résumé of such testimony. To epitomize, this evidence shows that some of these articles can be manipulated by persons familiar with them so that simple airs may be produced there-

from, such airs as are written in the diatonic scale of C major. The scales are not perfectly tuned, defective keys and notes being commonly found. Some of these airs were played before the trial court and it appears that the members of the court were able, at times, to recognize the airs. The great preponderance of the evidence is that they are not used by musicians in the rendition of music or for teaching, but are occasionally used in so-called "jazz" orchestras or bands, to make novel and unusual sounds. It is not contended that they are commonly or ordinarily used in orchestras or bands.

One witness stated that he had seen the orchestra leader, Rudy Vallee, play on an instrument resembling one of the imported "saxophones" in connection with the rendition of an orchestral selection. Some testimony also appears in the record to the effect that these articles may be used to impart the rudiments of musical theory to children.

The record shows that these articles are commonly sold in toy shops and in the toy departments of stores. We think the preponderance of the evidence shows also that the major use of the same is by children for the purpose of amusement. No other use of the same has been established, except such uses as are hereinbefore detailed, which uses appear to be fugitive and occasional only.

A consideration of the decision of the trial court discloses that the trial court was of opinion that, inasmuch as persons skilled in the use of these articles might play simple airs thereon, the imported articles should be classified as musical instruments, under the claimed authority of *August Pollmann et al.*, G. A. 4855, T. D. 22765, 40 Treas. Dec. 118, and *United States* v. *Bernard, Judae & Co. et al.*, 13 Ct. Cust. Appls. 306, T. D. 41230.

The *Pollmann* case, *supra*, arose under the tariff act of July 24, 1897, paragraph 453, which provided, in part, for "musical instruments or parts thereof." The competing paragraph of said act, paragraph 418, was as follows:

418. Dolls, doll heads, toy marbles of whatever materials composed, and all other toys not composed of rubber, china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for in this Act, thirty-five per centum ad valorem.

General Appraiser Fischer, in deciding the matter, said, in part:

* * * If an article is capable of being played upon as a musical instrument by a person who has learned to play such an instrument, whether that person be a child or an adult, it cannot be said to be chiefly designed and suitable for use as a plaything for children, and is not a toy. If it is so capable of being played upon as a musical instrument, it is immaterial what may be its size, the quality of its tone, its price, or the cheapness of its construction. * * *

It will be noted, however, that in this case small accordions were imported. As to these, it was stated that they did not have the

regular number of keys and were not "such instruments as could be practically used for musical purposes by anyone." The protest was overruled as to these accordions.

In *United States* v. *Bernard, Judae & Co. et al., supra,* this court considered the classification of certain musical instruments classified as toys under paragraph 1414 of the Tariff Act of 1922, and claimed to be dutiable as musical instruments under paragraph 1443 of the same act. These articles were invoiced as reed cornets and reed slide trombones, were well and durably made and retailed for substantial prices. The record showed them to be used by adults, as traps or accessories, in bands and in teaching, by children for entertainment, and by teachers in instruction of pupils. While we expressly stated that the case was a border line one, we held that the definition of the word "toy", as given in *Illfelder* v. *United States,* 1 Ct. Cust. Appls. 109, T. D. 31115, was applicable. This definition was as follows:

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

We further quoted, with approval, General Appraiser Fischer's definition of a musical instrument given in the *Pollmann* case, *supra.* Upon the testimony and the legal principles thus announced, we held the imported articles to be musical instruments.

When the Congress was preparing the bill which afterwards became the Tariff Act of 1930, the committees of both houses having this legislation in charge had before them the Summary of Tariff Information, 1929, prepared by the United States Tariff Commission for their assistance. The case of *United States* v. *Bernard, Judae & Co. et al., supra,* was brought to their attention by this publication. Summary of Tariff Information, 1929, vol. 2, p. 1955.

On the hearings before the Senate Committee on Finance, the Toy Manufacturers of the United States and the American Doll Manufacturers Association appeared before the committee, called attention to many decisions of the courts on toys, and asked for a definition of the word "toy" by further language in the paragraph. Pages 238–244, vol. 15, Hearings.

Thereafter, language was added to the toy paragraph by the Senate committee, paragraph 1513 of the Tariff Act of 1930, as follows:

* * * 'As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical

exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

In this form, it became the law. From this legislative history, it seems quite evident that this amendment was added to clarify situations such as caused this court to view the *Bernard, Judae & Co. et al.* case, *supra*, as a border line case. From this amendment it is equally evident that if an imported article was used chiefly for the amusement of children, it was, for customs purposes, a toy, and it was not important what its other or incidental uses might be.

Accordingly we held, under the Tariff Act of 1930, that masks returned for duty as toys by the collector were properly classified as such rather than under the *eo nomine* designation "masks," in the absence of proof impeaching the collector's classification, which carried with it a finding that the articles were chiefly used for the amusement of children. *S. H. Kress & Co.* v. *United States*, 22 C. C. P. A. (Customs) 421, T. D. 47423.

In *United States* v. *Woolworth Co.*, 23 C. C. P. A. (Customs) 234, T. D. 48083, also under the Tariff Act of 1930, this court held certain small articles called metallophones to be toys and not musical instruments, although demonstrations before the court disclosed that it was possible to play simple tunes thereon.

A case on the facts very similar to the one at bar is *United States* v. *B. Illfelder & Co.*, 18 C. C. P. A. (Customs) 31, T. D. 44002. Small tin ukuleles were there involved, classified as toys under paragraph 1414 of the Tariff Act of 1922, and claimed to be dutiable as musical instruments under paragraph 1443 of said act. We therein distinguished the case from *United States* v. *Bernard, Judae & Co. et al.*, *supra*, and said, in part:

We are clearly of opinion that these goods are not musical instruments. It will be observed that Chief Justice Fischer stated in the *Bernard, Judae & Co.* case, *supra*, that to constitute a musical instrument the article must be capable of being played upon as a musical instrument by a person who has learned to play such an instrument. No one has contended, in this case, that these imported articles are capable of being played upon, as ukuleles are usually played upon, by musicians conversant with their use. The fact that some one can painfully and arduously pick a tune, or tunes, out of one of these tin contrivances, does not at all prove its use in playing music as ukulele players would play it. In our opinion they are nothing but toys and should be classified as such.

The appeal as to protest 709621–G is *dismissed*.

The judgment of the United States Customs Court, as to the remaining protests, is *reversed*.