## UNITED STATES v. BERNARD, JUDAE & CO. ET AL. (No. 2505)[1]

1. CONSTRUCTION, PARAGRAPH 1414, TARIFF ACT OF 1922—"TOYS."

"In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally." *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109. An article reasonably capable of practical use by a child is within this definition, although that practical use may also, incidentally, amuse the child.

2. CONSTRUCTION, PARAGRAPHS 1414 AND 1443, TARIFF ACT OF 1922—"TOYS"—
   "MUSICAL INSTRUMENTS."

"If an article is capable of being played upon as a musical instrument by a person who has learned to play such an instrument, whether that person be a child or an adult, it can not be said to be chiefly designed and suitable for use as a plaything for children, and is not a toy. If it is so capable of being played upon as a musical instrument, it is immaterial what may be its size, the quality of its tone, its price, or the cheapness of its construction." T. D. 22765. What is or is not a musical instrument depends largely upon circumstances. To the savage, a tom-tom or a section of a hollow log may be a musical instrument; to the cultured musician, anything beneath the grade of violin or pianoforte may seem crude and not truly the instrument of a musician. But it is all comparative.

3. COMMERCIAL DESIGNATION.

Commercial designation must be shown to be definite, uniform, and general. Testimony that witness had been in the business of selling toys for 27 years, that he had handled goods similar to those at bar, that there was a class of goods well known in the trade then and for many years past as toys, and that the goods at bar were then, and had been for 20 years, within that class, does not go to this extent.

---

[1] T. D. 41230.

4. BRASS HORNS—MUSICAL INSTRUMENTS—TOYS.

Rather well made brass horns, such as cornets, bugles, and trombones, capable of producing simple music, used by children for self entertainment and for elementary musical instruction and by adults as accessories in bands or orchestras and as party favors, are musical instruments under paragraph 1443, Tariff Act of 1922, and not toys under paragraph 1414, or miscellaneous metal manufactures under paragraph 399.

## United States Court of Customs Appeals, December 4, 1925

APPEAL from Board of United States General Appraisers, G. A. 8885 (T. D. 40462)

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*Fred J. Carter,* special attorney, of counsel), for the United States.

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

[Oral argument Oct. 16, 1925, by Mr. Hoppin and Mr. Isenschmid.]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The articles which are the subject of litigation here were entered for consumption as musical instruments. They were returned for duty by the collector as toys, at 70 per centum ad valorem under paragraph 1414 of the Tariff Act of 1922, which is as follows:

1414. Dolls, and parts of dolls, doll heads, toy marbles, of whatever materials composed, air rifles, toy balloons, toy books without reading matter other than letters, numerals, or descriptive words, bound or unbound, and parts thereof, garlands, festooning and· Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads, and all other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for, 70 per centum ad valorem.

They were claimed by importers to be dutiable under paragraph 1443 of said act, the material portion of which is as follows:

1443. Musical instruments and parts thereof, not specially provided for, * * * 40 per centum ad valorem: * * *

There was also an alternative claim under paragraph 399 of said act, as manufactured articles not specially provided for.

As shown by the official samples, the articles in question are: First, an instrument designated as a "reed cornet, four notes," in the consular invoice. This instrument is made of brass tubing, has the general shape of a bugle, with a brass bell and white metal detachable mouthpiece; is about 9 inches in length, and has four lateral spring valves with keys attached thereto. By blowing through the mouthpiece, and at the same time pressing one of these keys, a musical tone is produced. These tones embrace an octave in scope and constitute what are known as the open tones on a cornet. Second, a similar instrument, about 1 foot in length and having six

keys, embracing one octave, with four intermediate tones. Third, a similar instrument, of the same length, but having eight keys, embracing, a complete diatonic scale of one octave. Fourth, a similar instrument, invoiced as a "reed slide trombone," about 20 inches in length, shaped like a slide trombone, with a slide capable of being extended about 10 inches, and with four valves. These valves are not operated with keys, but by the slide. When the slide is propelled back and forth, air blown into the mouthpiece is admitted to the various valves, thus making four tones, embracing all the cornet open tones of one octave. The reeds in all these instruments are contained within the valves and not in the mouthpieces. The articles are well and substantially made of a good, heavy quality of material, and they sell at retail for prices ranging from $1 to $2.50 each.

There is some conflict in the testimony, but it may be said to fairly show the following facts: These articles are sold by the importers, in principal part, to dealers in musical instruments. There is testimony, however, which shows that the articles are retailed by the toy departments of department stores as well as by dealers in musical instruments. They are used both by children and by adults. On the slide trombone, and four and six keyed cornets, imitations of bugle calls can be played, while on the eight-keyed cornet, simple tunes, embraced within the scope of one octave, can be played. They are used by children for self-entertainment, and, under the instruction of parents and kindergarten teachers, to learn the rudiments of music. By adults they are used as traps, or accessories, in bands or orchestras and for teaching children music; there is also testimony that *kinder*, or children symphonies, have been written by skilled composers of music, to execute parts of which these instruments are used; such passages are written to imitate the sounds made by children at play, and can be executed only by skilled musicians. There is also an occasional use of these articles by adults as favors at banquets. There is furnished with each instrument, when sold, some simple music, which can be executed upon it.

In addition to this testimony, a witness, Walter Strobel, was called by the Government and testified in substance as follows: That he had been in the business of selling toys for 27 years; that he had handled goods similar to those in the case at bar; that there is a class of goods well known in the trade as toys, and which has been so known for a great many years; that the articles imported here would come within that class, and such would have been also true for 20 years past. This is said, by Government counsel, to be proof of commercial designation sufficient to control the classification of the articles imported here. We do not think so. Commercial designation, to be available, must be established in conformity with well-

established principles. The party asserting it must prove that the commercial designation is definite, uniform, and general. This testimony does not go to that extent. *United States* v. *Wakem & McLaughlin*, 6 Ct. Cust. Appls. 385; *United States* v. *Field & Co.*, 10 Ct. Cust. Appls. 183.

With such facts before it, the court below held the articles in question were musical instruments. It is alleged this was error, both of law and fact.

It must be conceded the case is one that lies in the borderland between paragraphs 1414 and 1443, supra. It illustrates the great difficulty in laying down any broad general principles in customs cases which may serve as a guide in future litigation over the same subject matter. What may seem at the time to be inconsequential amendments to existing tariff laws, differences in the degree and quality of the proof offered in various cases, differences, although slight, in the exact character of the article imported, render such uniformity of decision often impossible. Hence, judicial decisions in customs classification matters are, only too often, the rule only as to the case decided. Occasionally, however, a general rule can be announced, the force and guiding influence of which continue. Such a case was *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109. There, the definition of a toy was given, which has not since been departed from. Although so often quoted, a repetition of it will not be amiss here:

> In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

Considering the facts in this case in the light of the quoted definition, we can not come to the conclusion that the articles imported here are "reasonably fitted for no other purpose" than the amusement of children. They have a practical purpose, and this practical purpose, although it may be a minor one, is sufficient to remove the articles from the general designation of toys. It will be observed that the Illfelder case does not hold that to remove an article from the designation of toy, it must be reasonably fitted for the amusement of, or practical use by, adults alone, but it will be sufficient if the article is reasonably capable of practical use by a child, although that practical use may also, incidentally, amuse the child.

But, furthermore, no reason appears why these articles should not be classified as musical instruments. What is or is not music, what is or is not a musical instrument, depends largely upon circumstances.

To the savage a tom-tom or a section of hollow log may be a musical instrument; to the cultured musician, anything beneath the grade of violin or pianoforte may seem crude and not truly the instrument of a musician. But it is all comparative. It is for this reason that judicial decisions upon the subject seem confused. To illustrate, in T. D. 22765, 4 Treas. Dec. 118, diminutive accordions and violins, in Abstract 23516, 19 Treas. Dec. 664, earthenware ocarinas, in T. D. 25310, 7 Treas. Dec. 801, small music boxes turned with a crank, called "piccolos," and in T. D. 39396, 43 Treas. Dec. 18, mechanical birds in cages, capable of producing a simple tune, were held to be musical instruments. This court, in *United States* v. *Sears, Roebuck & Co.*, 7 Ct. Cust. Appls. 60, held a triangle, and in *United States* v. *Sears, Roebuck & Co.*, 9 Ct. Cust. Appls. 33, a jew's-harp, to be musical instruments.

On the other hand, blow accordions, in Abstract 18097, 15 Treas. Dec. 109, small wooden whistles with a metal reed, in T. D. 32777, 23 Treas. Dec. 117, and in *Borgfeldt* v. *United States*, 124 Fed. 473, harmonicas and metallophones, were held to be not musical instruments.

It will thus be seen there is but little uniformity of judicial decisions on this subject. On the whole, we believe the most clear and concise definition of a musical instrument found in any of the cases is that given by General Appraiser Fischer in T. D. 22765, *supra*, where it is said:

If an article is capable of being played upon as a musical instrument by a person who has learned to play such an instrument, whether that person be a child or an adult, it can not be said to be chiefly designed and suitable for use as a plaything for children, and is not a toy. If it is so capable of being played upon as a musical instrument, it is immaterial what may be its size, the quality of its tone, its price, or the cheapness of its construction.

In our opinion the articles imported here are musical instruments and the court below was right in so finding. Its judgment is therefore *affirmed*.