Louis Wolf & Co., Bing Wolf Corp. *v.* United States (No. 3414)[1]

United States Court of Customs and Patent Appeals, November 2, 1931

*Brown & Carter* for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler*, special attorney, of counsel), for the United States.

[Oral argument October 12, 1931, by Mr. Carter and Mr. Lawrence]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Bland, Judge, delivered the opinion of the court:

This appeal involves the proper dutiable classification for customs purposes of certain small, cheaply constructed phonographs, which were classified by the collector of customs at the port of New York as toys under paragraph 1414, Tariff Act of 1922.

---

[1] T. D. 45258.

The importers protested the said classification and the assessment of duty and claimed the merchandise to be dutiable under several paragraphs of the same act, but here rely upon the claim for classification under paragraph 1444 of said act as phonographs, or under paragraph 372 of said act as "all other machines or parts thereof."

The United States Customs Court, First Division, overruled the protest and sustained the classification of the collector.

The pertinent parts of the three competing paragraphs of the Tariff Act of 1922 under consideration here are as follows:

PAR. 372. * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: * * *

PAR. 1414. Dolls, * * * and all other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for, 70 per centum ad valorem.

PAR. 1444. Phonographs, gramophones, graphophones and similar articles, and parts thereof, not specially provided for, 30 per centum ad valorem; * * *

The article at bar is a small phonograph composed entirely of thin, cheap metal with the exception of the paint and enamel and some kind of cloth coating for the revolving disk which holds the record. The machinery of the same is contained in a tin box with a hinged cover, about 6 inches square by 3½ inches high. It plays a record which is in the usual form except that it is a trifle under 6 inches in diameter. The box lid contains the printed phrase "Bing pygmy-phone."

In *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T. D. 31115, where a similar question was at issue, in an opinion by Smith, J., the following definition was given for a toy:

In common speech, and as popularly understood, *a toy is essentially a plaything, something which is intended and designed for the amusement of children only*, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally. (Italics not quoted with the exception of "reasonably.")

While this definition in some of the later decisions of this court may have been explained and somewhat extended, it has never been changed or modified in any material respect and should be and is, we think, generally accepted as a most satisfactory judicial definition of a toy in a case like the one at bar.

The Government contends that the article in controversy is shown by the record to be exclusively used for the amusement of children and that, owing to its size, shape, and flimsy construction, it is not reasonably capable of any other practical use and is, therefore, a toy.

The record shows that the instrument is made under instructions from the purchaser to be exactly like larger ones except that it should

be smaller and cheaper. An examination of the same shows that it is a complete phonograph with horn, disk, needle holder, spring, governor, and all the other essential parts required to make it play the diminutive records provided for the same. It is capable of playing and does play the complete record, possibly with less distinctness and clearness than do the larger and more expensive and solidly built machines, but its deficiency in this regard is only a question of degree.

It is shown that this instrument is manufactured and purchased to be sold at retail for $1. There were a number of illustrative exhibits introduced at the trial below which sell at retail for $2, $3, $5, and $6.50 to $7.50, all of which exhibits are small, cheap phonographs differing in size, workmanship, and expense of material, the more expensive ones being more durable and substantial than the cheaper ones. The tone of the various exhibits seems to improve somewhat in proportion to the increased price.

The article at bar winds in the same manner as the larger ones and plays some of the records played by the larger machines. It is sold in department stores, music stores, mail-order houses, general stores, and the record shows that it is ofttimes sold in the toy department. One of appellants' witnesses testified that merchandise like that at bar was used in the factory for testing phonograph records.

We conclude upon the record before us that the merchandise involved is a phonograph. It may be a poor one, but, as far as we are advised, it lacks no essential element necessary to entitle it to be regarded as such for tariff purposes. We do not think it is a plaything such as was referred to in the *Illfelder* case, *supra*. Although it may be chiefly, if not almost exclusively, used by children, it would seem to fall into the class of articles referred to in *United States* v. *Field*, 12 Ct. Cust. Appls. 543, T. D. 40738, as "junior editions," that is, a small article designed for a small person. To hold the article at bar a toy would, to our way of thinking, necessitate the holding of children's small, substantially built bicycles to be toys, since they can only be used by children. There are toy bicycles which are readily distinguishable from small bicycles used by children and which are not toys.

In *United States* v. *Field, supra*, small tenpins, used by children in playing a game, were held to be "junior editions" of games played by adults and not toys.

In *United States* v. *Strauss*, 13 Ct. Cust. Appls. 167, T. D. 41025, small croquet sets, designed for use in playing the game on a table by either children or adults, were held dutiable as games rather than as toys. In that case we said:

Under *United States* v. *Field & Co.*, 12 Ct. Cust. Appls. 543, T. D. 40738, it seems clear that Exhibit 39, which consists of a table croquet set heretofore

described, is not a toy, but it is a small, complete croquet set, used not as a plaything, necessarily, any more than a boy's baseball is a plaything, but is the complete outfit for a game played under definite rules and regulations, either by children or adults. This article is no more a toy than is a small bicycle used by a small boy for practical purposes.

Likewise in *United States* v. *August Merckens*, 17 C. C. P. A. (Customs) 318, T. D. 43742, small slot or vending machines which delivered chocolate, having slots in which a penny might be dropped, were held not to be toys but machines.

In *United States* v. *Borgfeldt & Co.*, 13 Ct. Cust. Appls. 620, T. D. 41461, we held small, cheap, ornamental music boxes used by children to be musical instruments rather than toys.

See also *United States* v. *Globe Overseas Corp.*, 13 Ct. Cust. Appls. 10, T. D. 40849, and *United States* v. *Bernard, Judae & Co.*, 13 Ct. Cust. Appls. 306, T. D. 41230.

The Government argues that the case is controlled by *United States* v. *B. Illfelder & Co.*, 18 C. C. P. A. (Customs) 31, T. D. 44002, where small ukuleles, made of tin, with 4 small gut strings, with a marked paper pasted under the strings serving as frets, were classified as toys and not as musical instruments; and by *United States* v. *B. Illfelder & Co.*, 17 C. C. P. A. (Customs) 197, T. D. 43646, where certain machines, described as motion-picture machines, were held to be toys; and by *United States* v. *Wanamaker*, 15 Ct. Cust. Appls. 310, T. D. 42485, which involved small steam engines which were held to be toys.

We do not regard it as necessary to discuss all of these cases and deem it sufficient to call attention to the fact that in the *Wanamaker* case, last cited, it was pointed out that the engine involved was not shown to have had any useful purpose nor any of the purposes for which the engines provided for in the engine paragraph were intended, and that the so-called engines there at bar were suitable only for the amusement of children. The facts in that case are not on all fours with the facts in the case at bar. Here the merchandise is designed to perform and does perform the same functions though more imperfectly than the larger models.

We conclude, therefore, that the merchandise at bar should have been classified under the *eo nomine* designation "phonographs" in paragraph 1444, which is more specific than the provisions of paragraph 372, which provides for "all other machines or parts thereof."

The Government in its brief purports to quote from *United States* v. *B. Illfelder & Co.*, 17 C. C. P. A., *supra*, and says:

The court further held that—

Where an imported article is within the purview of the toy paragraph an *eo nomine* designation in some other paragraph will not remove it from its classification as a toy.

While this exact language is not found in the opinion referred to, it probably is a correct paraphrase of one sentence in the same. The paragraph to which reference is evidently made is found on pages 199 and 120 of the 17th volume of this court's customs decisions and is as follows:

With this observation, we might dispose of the matter, upon the authority of *Davies, Turner & Co.* v. *United States*, 3 Ct. Cust. Appls. 110, T. D. 32363, and *United States* v. *Wanamaker*, 15 Ct. Cust. Appls. 310, T. D. 42485. In each of these cited cases, this court held that if an imported article were within the purview of the toy paragraph, then an *eo nomine* designation elsewhere would not remove it from classification as a toy.

From a consideration of the holding in the two cited cases and in the case from which the quotation is made, it is not fair to assume that this court intended to hold that an *eo nomine* designation of a toy in a paragraph other than the toy paragraph would not take an article out of the general toy provision in the toy paragraph. Obviously by the expression used the court meant that an *eo nomine* designation of an article in a provision not intended to include toys would not remove the article from the toy paragraph, if it in fact was a toy. For instance, it was held in the *Wanamaker* case, cited in the above quotation, that an *eo nomine* designation for steam engines would not take out of the toy paragraph a toy steam engine.

The judgment of the United States Customs Court is *reversed* and the case *remanded* for proceedings consistent with the views herein expressed.

### DISSENTING OPINION

LENROOT, Judge: I am compelled to dissent from the decision of the majority in this case, because I do not believe that the judgment of the court below is contrary to the weight of the evidence.

An examination of the sample in evidence discloses that it is a small, flimsy article of the cheapest possible construction, and from an inspection alone, together with its operation, I am compelled to conclude that it was never designed or intended for any other purpose than the amusement of children. In addition to this, the testimony of two witnesses for the Government is to the effect that merchandise represented by this sample is used only for the amusement of children. Three witnesses testified for the appellant, and their testimony is exceedingly weak as to any use of the merchandise other than for the amusement of children.

The lower court heard the testimony of the witnesses; it had the sample before it, and in my judgment there was ample evidence to sustain the judgment reached by it. To my mind, Congress never could have intended that an article like that here in question should be regarded as a phonograph within the meaning of that word as used in paragraph 1414 of the Tariff Act of 1922.