The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* F. W. WOOLWORTH CO. (No. 3931)[1]

United States Court of Customs and Patent Appeals, December 16, 1935

*Joseph R. Jackson*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellee.

[Oral argument December 6, 1935, by Mr. Folks and Mr. Sharretts]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise here involved is stated to have been invoiced as "metallophones." It was classified by the Collector of Customs as toys under paragraph 1513 of the Tariff Act of 1930, duty being assessed at 70 per centum ad valorem. Appellee protested, claiming classification under paragraph 1541 of the same act, which provides for musical instruments, with duty assessment at 40 per centum ad valorem. The United States Customs Court, First Division, one judge dissenting, sustained the protests. The Government appealed.

While, as stated by the trial court, samples of the particular merchandise included in the involved entries were not introduced in evidence, there was introduced the record in a prior case of *Woolworth & Company v. United States*, which included two samples that are treated by counsel for both the Government and the importer as being representative of the merchandise, classification of which is

[1] T. D. 48083.

here in controversy. In the said former case the United States Customs Court, First Division, sustained protests and held the devices represented by Exhibits 1 and 2, to be classifiable under the musical instrument paragraph. *Vide* Abstract opinion 26200, 64 Treas. Dec. 1114. No appeal was taken in that case.

The brief for the Government in the instant case gives a description of the exhibits filed in the former case, which, from our inspection of them, we regard as sufficiently accurate, and, therefore, quote it:

Exhibit 1 consists of two strips of wood eleven inches long by a little less than three-quarters of an inch thick and about a half-inch wide, with smaller pieces of wood inserted between them at each end. They are held together by twelve metal strips nailed across the upper side. These metal strips are about three-quarters of an inch wide and vary in length from a little over an inch and a half at the narrow end of the article to a little more than two and a quarter inches at the wide end. They have indented thereon the letters "A, B, C, D, E, F, G." Along the top and underneath the metal strips on each side a piece of cotton string is fastened. The back is covered by a piece of paper, being pasted thereon. Also contained in the paste-board box in which the said exhibit is packed are two miniature mallets with handles four and a half inches long and about one-quarter of an inch in circumference. The mallet heads are about three-quarters of an inch in length and less than half of an inch in circumference. The paste-board box has a printed design on the outside and on the outside of the cover is pasted a colored picture showing four young children, three of whom are apparently playing upon an article similar to Exhibit 1. On the inside of the cover is printed a musical scale entitled "Sweet and Low."

Exhibit 2. The above description also applies, except that the two strips of wood are eight and a half inches in length and have only nine pieces of metal nailed across them. The card-board box containing this exhibit has a printed design thereon and on the cover is pasted a colored picture depicting seven little children in a wedding march with one of them playing with an article apparently representing Exhibit 2. The box also contains two miniature mallets, the same as in Exhibit 1, but there is no musical scale printed on the inside of the cover.

The pertinent parts of the competing paragraphs read:

Par. 1513. * * * toy souvenirs, of whatever materials composed, * * * and all other toys, * * * not specially provided for, 70 per centum ad valorem. As used in this paragraph, the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

Par. 1541. (a) Musical instruments and parts thereof, not specially provided for, pianoforte or player-piano actions and parts thereof, * * * all the foregoing, 40 per centum ad valorem; * * *

In the prior case alluded to, two witnesses were called on behalf of the importer and one on behalf of the Government. In the instant case the importer called one witness and the Government called two.

The two witnesses called by the importer in the prior case testified that they were professional musicians. One of them stated that he

specialized upon the xylophone; the other that he specialized upon the accordion.

Each testified, in substance, that tunes could be played on the exhibits and each seems to have made demonstrations before the trial court by playing some "simple tunes."

The witness called by the importer in the instant case merely identified the exhibits of the former case as being representative of the articles here involved.

The witness called by the Government in the earlier case testified that he was the "head" of a toy company which produces articles like Exhibits 1 and 2 and sells them "to retail stores and toy jobbers, toy wholesalers"; that such articles were called metallophones; that he had "followed them into use"; that he had seen them used by children of "Various ages, * * * up to 8 or 9 years old," and that he had never seen such articles used in orchestras, or at "musical events."

One of the witnesses called by the Government in the instant case testified that he was a professional musician, having graduated from institutions where musical instruction was given; that he played professionally on a number of different instruments, including xylophones; that he taught music; that he did not regard the exhibits as being "musical instruments"; that the scale could not be run on them because, although marked on the bars, the "bars aren't in tune, and * * * there are notes missing"; that he tried a scale, and that, in his opinion, "a real musical tune" could not be played on either exhibit.

The other witness called by the Government testified that she was a professional nurse; that during her activities in that profession she had had the care of children and that she had seen many of them playing with articles like the exhibits. "To amuse themselves * * * Just taking the little hammer and going up and down the scale, the notes."

The foregoing comprises the substance of all the evidence in the case regarded as material, the samples themselves being treated as included.

These latter we regard as very potent witnesses. *Vide* *United States* v. *Frankel Importing Co.*, 18 C. C. P. A. (Customs) 188, T. D. 44378.

One of the definitions of metallophone given in Webster's New International Dictionary is:

An instrument like the xylophone, but having metallic instead of wooden bars.

The same authority defines xylophone as—

An instrument consisting of a series of wooden bars, graduated in length to the musical scale, resting on belts commonly of straw, and sounded by striking with two small wooden hammers, sometimes by rubbing with rosined gloves.

From the description of the exhibits in this case, given *supra*, it appears that they are modeled after the metallophone as above defined.

The majority opinion of the trial court expresses the belief that the articles involved are within the definition of "musical instrument," given by Judge Fischer, formerly of that court, in T. D. 22765, which definition was quoted with approval by this court in the case of *United States* v. *Bernard, Judae & Co. et al.*, 13 Ct. Cust. Appls. 306, 310, T. D. 41230. This definition reads:

If an article is capable of being played upon as a musical instrument by a person who has learned to play such an instrument, whether that person be a child or an adult, it cannot be said to be chiefly designed and suitable for use as a plaything for children, and is not a toy. If it is so capable of being played upon as a musical instrument, it is immaterial what may be its size, the quality of its tone, its price, or the cheapness of its construction.

In the *Bernard, Judae & Co.* case, *supra*, the merchandise there found to fall within the quoted definition, consisted, as described in the syllabus, of

Rather well made brass horns, such as cornets, bugles, and trombones, capable of producing simple music, used by children for self entertainment and for *elementary musical instruction and by adults as accessories in bands or orchestras and as party favors.* (Italics not quoted).

In the body of the opinion this court said of the articles, "They have a practical purpose, and this practical purpose, although it may be a minor one, is sufficient to remove the articles from the general designation of toys."

We think it obvious that the record in the instant case would not justify a finding that the involved devices have the slightest practical purpose. Except for the demonstrations made in the presence of the trial court, there is no showing that any adult ever attempted to play a tune on one of them, or to make any use whatsoever of them, and we are unable to bring ourselves to the belief that they fall within the definition of "musical instrument," quoted *supra*, under any fair and reasonable interpretation of that definition.

The case of *United States* v. *B. Illfelder & Co.*, 18 C. C. P. A. (Customs) 31, T. D. 44002, seems to have escaped the attention of all the parties to this controversy. At least it is nowhere cited. We regard it as being directly in point here.

The merchandise there involved consisted of small articles made of tin in the form of, or in imitation of, ukeleles. Each had four small gut strings, a neck and pegs of wood by which the strings could be tightened or loosened, and there, as here, it was found that simple tunes might be produced. There, as here, the trial court held the articles to be classifiable as musical instruments. This court felt constrained to reverse the judgment and sustain the collector's classification of the articles as toys.

We think, the same course must be taken here for substantially the same reasons that controlled there.

That case arose under the Tariff Act of 1922 while the instant case arose under the 1930 act. The toy paragraph in the latter differs in a number of respects from the toy paragraph of the former, but it is unnecessary here to consider the effect of the differences in phraseology, in view of our conclusion as to the actual nature of the articles involved.

However, it is not amiss to direct attention to our decision in the case of *S. H. Kress & Co.* v. *United States*, 22 C. C. P. A. (Customs) 421, T. D. 47423, where it was held that certain children's masks in chief value of paper or papier mâché were properly classifiable under paragraph 1513 of the Tariff Act of 1930, although *eo nomine* mentioned in paragraph 1403 of the same act.

We hold that the articles here involved are not musical instruments in the sense of paragraph 1641, *supra*, but that they are toys in the sense of paragraph 1513, *supra*.

The judgment of the United States Customs Court is *reversed.*