**NEW YORK MERCHANDISE CO., Inc.**

v.

**UNITED STATES.**

**C.D. 3671; Protest No. 66/3407–2099.**

United States Customs Court,
First Division.
Jan. 20, 1969.

Stein & Shostak, Los Angeles (S. Richard Shostak and Leonard M. Fertman, Los Angeles, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Glenn E. Harris and Velta A. Melnbrencis, New York City, trial attorneys), for defendant.

Before WATSON and MALETZ, Judges.

MALETZ, Judge:

This case involves the proper classification of imported merchandise which was invoiced as "vinyl baseball gloves," and more particularly described as "9½" x 7½" Vinyl Junior Baseball Glove." It was classified by the collector under item 737.90 of the Tariff Schedules of the United States (19 U.S.C. § 1202) as other toys, not specially provided for, and assessed with duty at 35 percent ad valorem.

Plaintiff's claim is that the importation is properly classifiable under item 734.55 of the tariff schedules as "Baseball equipment and parts thereof," dutiable at 15 percent ad valorem. Alternatively it is claimed to be classifiable under item 735.05 as "other gloves * * specially designed for use in sports," also dutiable at 15 percent ad valorem.

The issue therefore is whether the imported gloves are toys, as classified, or whether they constitute baseball equipment or gloves specially designed for use in sports, as claimed by plaintiff. We hold that the collector's classification is erroneous and that the importations are properly classifiable under item 734.55 as baseball equipment.

Set out below are the provisions of the tariff schedules with which we are concerned:

Classified under:

Subpart E [Schedule 7, Part 5].—Models; Dolls, Toys, Trucks, Party Favors

Subpart E headnotes:

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules * * *—

    *　　*　　*　　*　　*　　*　　*　　*

2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.

    *　　*　　*　　*　　*　　*　　*　　*

　　Toys, and parts of toys, not specially provided for:

    *　　*　　*　　*　　*　　*　　*　　*

737.90　　　　　　Other . . . . . . . . . . . . . 35% ad val.

Claimed under:

Subpart D [Schedule 7, Part 5].—Games and Sporting Goods

Subpart D headnotes:

1. This subpart covers equipment designed for indoor or outdoor games, sports, gymnastics, or athletics, but does not cover—

\*   \*   \*   \*   \*   \*   \*   \*

(v) other wearing apparel, other than specially designed protective articles such as, but not limited to, gloves, \* \* \*

\*   \*   \*   \*   \*   \*   \*   \*

734.55    Baseball equipment, and parts thereof ...... 15% ad val.

\*   \*   \*   \*   \*   \*   \*   \*

735.05    Boxing gloves, and other gloves, not provided for in the foregoing provisions of this subpart, specially designed for use in sports ..... ........................ 15% ad val.

---

We first consider the facts in the case as shown by the record.[1] Initially, it is to be noted that the glove in issue is similar in appearance to baseball gloves used by professional players, and has various features and characteristics of such gloves. Thus, like the professionals' baseball glove, it has a solid stitched webbing between the thumb and the forefinger; fingers laced with rawhide; a pocket with padding; and a welted seam. In other aspects, too, of design and feel, it is the same or similar to gloves used by professional baseball players.

In construction, however, the imported glove is considerably less rugged than a professional baseball player's glove. For one thing, it is made of vinyl, whereas a professional's glove is made of leather to absorb perspiration. Beyond that, it is single-stitched; the thread is made of cotton; and the rawhide lacing—while substantial—is run through holes in the vinyl which lack eyelets to give it added strength. By contrast, the professional's glove is double-stitched; nylon thread is used; and it has eyelets around the holes. Nor is the glove in issue nearly as rugged as a vinyl glove in evidence which is conceded to be a baseball glove suitable for Little League play.[2] For the latter glove is made of a far heavier vinyl; it is double-stitched; and it has eyelets around the holes for added strength.

The imported gloves were displayed and offered for sale in plaintiff's showroom on a counter with plaintiff's "other baseball gloves," and were never displayed on any other counter in the showroom. The retail selling price of the imported glove was 98 cents. In com-

1. Two witnesses testified for plaintiff—a buyer for plaintiff and an attorney for plaintiff who, while attending law school, had been a playground director in San Francisco. Testifying for defendant was a vice president of the Los Angeles Dodgers in charge of its minor league teams who had been associated with baseball for 43 years and a Los Angeles police officer who had been closely connected with Little League baseball for some 8 years. Also included in the record were a sample of the merchandise in issue; a vinyl glove that was conceded to be a child's baseball glove; a baseball; and a catalogue of a leading domestic manufacturer of leather baseball gloves.

2. Participation in organized Little League baseball is limited to boys between the ages of 8 and 12.

parison, a leading domestic sport goods manufacturer makes various baseball gloves which sell at retail at a price ranging from $4.00 to $42.00, with gloves suitable for Little League play being in the $4.00 to $7.00 range.

The glove in issue, the record indicates, is suitable for use by children—particularly below the age of eight—in a regular or organized game of baseball. It does not appear to be rugged enough for Little League play but could be used as a substitute for that purpose. The record further indicates (1) that during the period 1953 to 1956, children aged 7 to 11 played organized games of baseball in parks in the poorer districts of San Francisco using gloves similar to those involved in this case; and (2) that children in other neighborhoods of San Francisco used gloves like those here in issue to play a regular game of baseball.

The evidence thus adduced establishes clearly that the imported gloves are not toys, but rather constitute baseball gloves, characteristic of the types of gloves commonly used in the game of baseball. First, the sample itself is a potent witness in demonstrating that the imported gloves are not toys, but baseball gloves capable of use in the game of baseball. Pertinent on this aspect is Wilson's Customs Clearance, Inc. v. United States, 59 Cust.Ct. 36, C.D. 3061 (1967), where it was held that a sample of the merchandise was of sufficient evidentiary value to rebut the presumption of correctness attaching to the classification of ornamental papier mache dogs as toys. While the testimony of the actual use of the merchandise as ornaments or objects of display for the rear windows of automobiles was limited in that case to local observations in New York City, the court pointed out (p. 40) that:

Nevertheless, as is especially true in toy cases, the sample merchandise can offer potent evidence on the question of use, and when in harmony with the other evidence of record, can permit the drawing of inferences as to use nationally. Fred Bronner Corp.

* * * [57 Cust.Ct. 428, C.D. 2832]. There is precedent under the two previous tariff acts for viewing sample evidence as sufficiently persuasive to rebut the presumption of correctness on a toy classification and to shift the burden to the defendant. United States v. Halle Bros. Co., 20 CCPA 219, T.D. 45995; United States v. Borgfeldt & Co., 13 Ct.Cust.Appls. 620, T.D. 41461.

Here, too, while the testimony as to actual use is similarly limited to local observations, the sample itself clearly compels a finding that the merchandise involved is not a toy. For (as we have seen) an examination of the sample establishes that the imported glove has all the features and characteristics of more expensive baseball gloves, such as a webbing between the thumb and forefinger, functional stitching and lacing through the fingers and heel of the glove, a pocket with padding, and a welted seam. Moreover, when one places the sample glove on one hand and pounds the other fist into the pocket, it becomes apparent that the importation is no mere toy, but a regular baseball glove modeled after those used by professional ballplayers. Indeed, defendant's witness who had been associated with organized baseball for 43 years testified that the only real difference between the glove in issue and the professional baseball glove is the quality of the material of which it is made.

Nor does the mere fact that the imported gloves are smaller, cheaper and less elaborate than larger, more expensive baseball gloves require that they be regarded as toys. To the contrary, it is a settled principle in cases involving merchandise classified as toys, that a "junior edition" of a larger, more expensive article is classifiable under the same provision as the more expensive article, if the cheaper article performs the same function on a smaller scale. Thus in United States v. Field & Co., 12 Ct.Cust.Appls. 543, T.D. 40738 (1925), the court considered the classification of small nine-

pin and tenpin sets which were used exclusively by children in the playing of a game. The sets were classified as toys under paragraph 1414 of the Tariff Act of 1922 and were claimed properly dutiable under paragraph 1402 of that act as game equipment. The court held that the sets were not toys, stating (p. 545):

> It is apparent from the description of the dimensions of the pins and balls that the articles are not mere playthings. They are of sufficient size to require that they be used in the playing of the game for which they were designed in order to afford amusement to children. These articles may be said, figuratively speaking, to be "junior editions" of like articles used by adults in the playing of the game of "tenpins" or "ninepins," rather than miniatures of such articles, so small as to be unfitted for use as ninepins or tenpins, and intended to be used and actually used only as mere playthings for the amusement of children.

To similar import is May Co. v. United States, 67 Treas.Dec. 965, T.D. 47760 (1935), where this court had before it certain rackets, somewhat smaller and much lower in cost than the average racket used by adults in playing the game of tennis, but suitable for and used by children ranging in age from 8 to 14 years in playing the game of tennis. The court held that the rackets were not toys under paragraph 1513 of the Tariff Act of 1930, as classified, but rather were "junior editions," small rackets designed for small persons and therefore properly classifiable under paragraph 1502 of the act—an *eo nomine* provision for rackets used with balls. The following statement by the court bears repetition (p. 968):

> We have examined Exhibits 1 to 8. While they are not high-class expensive rackets such as are used by adults, who can afford such rackets, in playing the game of tennis, they are fairly well made, and of a reasonably substantial nature. We think they are eminently suitable for use by children in playing tennis, or hitting a ball "back and forth", as testified by Mr. Veir. * * * It is our judgment that the merchandise represented by all of these exhibits, including Exhibit 8, are "junior editions", that is, small rackets designed for small persons (Louis Wolf Co., Bing Wolf Corp. v. United States, 19 C.C.P.A. 132). * * *

The decision in *May* was reaffirmed by this court in F. W. Woolworth Co. v. United States, 70 Treas.Dec. 435, T.D. 48573 (1936). "It is true [the court stated] that these rackets are cheap and cannot compare in strength, beauty of workmanship, or in length of life, with expensive tennis rackets used by professional players or adepts at the game of tennis; but there is nothing in paragraph 1502 to indicate that cheap, light rackets are excluded therefrom." 70 Treas.Dec. at 452.

Other cases in which inexpensive, "junior editions" of articles were held not classifiable as toys include United States v. Strauss & Co., 13 Ct.Cust.Appls. 167, T.D. 41025 (1925) (croquet sets designed for use on a table); United States v. Bernard, Judae & Co., 13 Ct. Cust.Appls. 306, T.D. 41230 (1925) (inexpensive musical instruments); United States v. Borgfeldt & Co., 13 Ct.Cust. Appls. 620, T.D. 41461 (1926) (small, cheap, ornamental music boxes); Louis Wolf & Co., Bing Wolf Corp. v. United States, 19 CCPA 132, T.D. 45258 (1931) (small cheaply constructed phonographs).

This "junior edition" concept has been carried over to the Tariff Schedules of the United States. Thus, Schedule 7 of the Explanatory Notes of the United States Tariff Commission's Tariff Classification Study, November 15, 1960, states (pp. 287–288):

> The classification problems connected with sports equipment and games and game equipment which may be chiefly used for the amusement of children are particularly troublesome. The product distinctions are elusive and it is not possible to completely resolve these problems in the revised schedule if, at the same time, an arrangement which would have some

economic significance is to be achieved. It is felt, however, that the proposed arrangement of this subpart would help materially to overcome some of the present difficulties. *The earlier provisions of this subpart discussed above for equipment for various games, such as baseball, croquet, and golf, are derived principally from tariff paragraph 1502, and it is intended that the equipment which would be classified thereunder would be of such character and quality as is ordinarily used in the serious pursuit of the game or sport named. Such equipment may be diminutive in size for use by children, such as a boy's baseball glove, but it would nevertheless be classified under these provisions so long as it was of a character suitable for use in organized play of the games.* All other articles which are not specially provided for elsewhere in the schedules and which are used in playing games or sports would be covered by this "basket" provision either as game, sport, gymnastic, athletic, or playground equipment not specially provided for. *Imitations of sports equipment are frequently made for small children. Such equipment is generally of very flimsy construction and is obviously not intended for, or used as, game or other equipment of the type provided for. Articles of this type are not covered by this subpart but would continue to be dutiable as toys and hence covered by the provisions for toys in subpart E of this part.*[3] [Emphasis supplied.]

Viewed against this background, it is apparent that the gloves in issue come within the "junior edition" concept. While less expensive and not as rugged as those gloves which are concededly base-ball gloves, it is apparent that they are not toys. Rather, they are of such character and quality as to be suitable for use by children—particularly below the age of eight—in a regular or organized game of baseball. Those children who cannot afford the more costly baseball gloves can still successfully engage in a base-ball game using the gloves in issue.

Strengthening the conclusion that the gloves in issue are baseball gloves is the fact that they were displayed and offered for sale on a counter with plaintiff's "other baseball gloves," and were never displayed on any other counter. This establishes that the gloves were regarded and handled at all times by the importer as baseball gloves, and not as toys. "Although a merchandising medium may not *always* be a proper means of determining classification," the manner in which a merchant displays his goods "can have obvious probative value" in this regard. Davis Products, Inc. v. United States, 59 Cust.Ct. 226, 230, C.D. 3127 (1967). [Emphasis quoted.]

We hold, in sum, that the imported gloves are baseball gloves. And as such, they are included within the term "Base-ball equipment" as that term appears in item 734.55. See Subpart D, headnote 1(v) of the Tariff Schedules, supra; Explanatory Notes to Tariff Classification Study, supra. Since the gloves are thus *provided for* under item 734.55, they are classifiable under that item rather than under item 735.05—which latter item covers only those gloves which are "not provided for in the foregoing provisions of this subpart, * * *." See Wico Corporation v. United States, 282 F. Supp. 798, 801, C.D. 3376 (1968).

The protest is sustained. Judgment will be entered accordingly.

---

**3.** The Tariff Classification Study has "the same standing as Summaries of Tariff Information which is recognized by the courts as authoritative for the purpose of resolving questions relating to the meaning and scope of terms appearing in tariff acts and in determining the intent of Congress." Rifkin Textiles Corp. v. United States, 54 CCPA 138, 141, C.A.D. 925 (1967).