(C.D. 4400)

M. H. GARVEY Co. *v.* UNITED STATES

(Decided January 16, 1973)

*Walter E. Doherty, Jr.*, attorney for the plaintiff.
*Harlington Wood, Jr.*, Assistant Attorney General (*Herbert P. Larsen*, trial attorney), for the defendant.

LANDIS, Judge: This case [1] involves merchandise imported from

---

[1] Two protests were consolidated for trial.

Japan which the manufacturer documented as an invoice of 100 "Cartons of Toys" each carton containing 150 articles described as "Jr. Metal Click Reels". The articles, recognizably fishing reels, were entered at Boston by plaintiff, M. H. Garvey Co., customhouse broker, for the account of the importer, New York Toy Corp. As required by law, on the customs form for so-called "consumption entry", plaintiff entered the articles as dutiable at 41.5 per centum ad valorem under the TSUS (Tariff Schedules of the United States) item 731.20 classification, fishing reels, valued not over $2.70 each.

Customs officials at Boston appraised and liquidated the entries "as entered" under TSUS item 731.20. Plaintiff's complaint in this case, however, alleges that the imported articles are "of a cheap, flimsy construction * * * incapable of serious use in the sport of fishing * * * chiefly used for the amusement of children" and asks the court to adjudge that the articles are not classifiable as fishing reels but as toys, and parts of toys, not specially provided for, dutiable under TSUS item 737.90 at 31 per centum ad valorem.

In the pertinent text of the tariff schedules, TSUS items 731.20 and 737.90 appear as follows:

SCHEDULE 7.—SPECIFIED PRODUCTS; MISCELLANEOUS AND NONENUMERATED PRODUCTS

Part 5. – Arms and Ammunition; Fishing Tackle; Wheel Goods; Sporting Goods, Games and Toys

\*    \*    \*    \*    \*    \*    \*

Subpart B. – Fishing Tackle

Subpart B headnotes:

\*    \*    \*    \*    \*    \*    \*

Fishing reels and parts thereof:
  Reels:

| | | |
|---|---|---|
| 731.20 | Valued not over $2.70 each_____ | 41.5% ad val. |
| 731.22 | Valued over $2.70 but not over $8.45 each_____ | $1.12 each |
| 731.24 | Valued over $8.45 each_____ | 13% ad val. |
| 731.26 | Parts _____ | 24% ad val. |

\*    \*    \*    \*    \*    \*    \*

Subpart E. – Models, Dolls,
Toys, Tricks,
Party Favors

Subpart E headnotes:

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff

schedules, but the provisions of this subpart do not apply to—

    (i) doll carriages, doll strollers, and parts thereof (see part 5C of this schedule);

    (ii) wheeled goods designed to be ridden by children, and parts thereof (see part 5C of this schedule); or

    (iii) games and other articles in items 734.15 and 734.20, toy balls (items 735.09–.12), and puzzles and games in item 735.20 (see part 5D of this schedule).

2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.

\*     \*     \*     \*     \*     \*     \*

Toys, and parts of toys, not specially provided for:

| | | |
|---|---|---|
| 737.80 | Toys having a spring mechanism | 37% ad val. |
| 737.90 | Other | 31% ad val. |

Plaintiff admits that the imported articles are valued not over $2.70 each. Qualifiedly, plaintiff further admits that the imported articles are fishing reels designed to be used with a fishing rod, line, and hook, in the pastime of fishing and that prior to the date of importation and at all subsequent times, merchandise of the same class or kind as the imported articles was used throughout the United States in attempting to catch fish. Plaintiff qualifies the latter admissions with the assertion that the imported articles are, however, of cheap, flimsy construction incapable of serious use in the art of fishing. Plaintiff denies that the imported articles are of a class or kind intended and chiefly used to catch fish asserting they are chiefly used for the amusement of children.[2]

On trial, plaintiff adduced the testimony of Mr. Herbert Rubin, president of New York Toy Corp., and moved in evidence the following, viz: an article (exhibit 1) representative of the imported articles; a fishing reel (exhibit 2), concededly of a kind used in sport fishing; a fishing reel, broken down to show the inside working gear mechanism (exhibits 3A and 3B), concededly of a kind used in sport fishing, and a photocopy of a letter (substituted for the original introduced into evidence on trial) from the Bureau of Customs to Mr. Herbert Rubin, New York Toy Corp., dated February 19, 1970, relevant to

---

[2] The admissions, qualifications, and denial were made upon defendant's request for admissions pursuant to the rules of this court. Rule 6.2.

the classification and dutiable status of a sample of a fishing reel made in Japan (exhibit 4).[3]

The sum and substance of Mr. Rubin's testimony is that the imported articles are toys, that they are not the size or quality of fishing reels with gears used in sport fishing, that the articles have no gears "to play a fish with", that the articles are "part of a kid's toy, play fishing set" consisting of the reel, a "small clay model of a rod", hooks without points and sinkers, a little book, and some cotton string. The testimony is to the further effect that Mr. Rubin does not sell the articles separately but as a part of a play fishing set, that the articles are a 10 cent reel or toy, that he sells the fishing play set nationally to department stores that display them in their toy department and to toy stores, and that he has seen the set used by children for play fishing in the bathtub.

Mr. Rubin also testified that the letter he received from the Customs Bureau (exhibit 4) contained a ruling that the imported articles were a toy and that he had a similar federal ruling, going back to 1947, that articles of the kind imported, manufactured in the United States, were a toy and not subject to manufacturer's federal excise tax.

Defendant's first witness was Mr. Richard C. Wolff, a freelance outdoor writer on sports fishing. Mr. Wolff testified that he had written articles for "Outdoor Life", "Field & Stream", and "Sports Afield"; that he was formerly on the staff of Fishing World, and that he is a member of the Outdoor Writers Association of America. He stated that he was, at the time of trial, also on the staff of Guns & Ammo and a vice president of Garcia Corp., manufacturers of sports fishing tackle. His writings included a book then in print entitled "Fishing Tackle & Techniques" of which Mr. Wolff said he would guess about a million copies had been sold.

Mr. Wolff described the imported articles (exhibit 1) as a fishing reel with two side plates, a reel foot, three pillars, a spool, two handles and a click mechanism assembled by riveting to make a fishing reel. He had observed that kind of reel used by "kids and even beginning adults, take it out and try to go fishing with it". Mr. Wolff stated that he could fish with exhibit 1 and identified exhibit A in evidence as a fishing rod made by Garcia Corp. He demonstrated how the reel foot of exhibit 1 could be mounted or fitted in the reel set of exhibit A so that both, with proper line, are in "fishable condition". Exhibit 1, Mr. Wolff stated, would hold sufficient line to catch a reasonably large fish, and game fish. A fisherman, according to Mr. Wolff, could cast reasonably well with exhibit 1 because the spool rotates well. Mr.

---

[3] The Bureau opined that the sample (there is no evidence connecting the sample with the imported fishing reels) submitted "is a small flimsily constructed fishing reel which is incapable of being used seriously in the sport of fishing. It is believed to be an article chiefly used in the United States for the amusement of children" classifiable as a "toy" under TSUS item 737.90.

Wolff further testified that fishing rods and reels are sold in two ways, as a complete fishing kit with rod, reel, lines, lures and hooks, or separately so that the fisherman can pick and choose to suit his needs and pocketbook. He was familiar with articles such as or similar to exhibit 1 which were sold separately, and identified one such article in the Horrocks-Ibbotson Company, Utica, New York, 1969 fishing catalog, page 10, HI No. 1841, in evidence (exhibit B), as a fishing reel which "in every outward appearance" is identical to exhibit 1.

Exhibit 1, Mr. Wolff stated, is known in fishing circles as a "bait casting reel" (without the gear mechanisms of exhibits 3A and 3B) of a kind with a direct drive to the spool axle without gears, and that he had used such a reel as "a kid" trying to catch, quite successfully, "sunnies", "catfish", and "perch". As recently as the last five years, he said, he had observed other people use a fishing reel such as exhibit 1 trying to catch fish.

On cross-examination, Mr. Wolff testified that exhibit A (fishing rod) sells for about $10. He explained that selling a fishing set is a matter of what a customer is willing to pay and the stock in the store; that, in terms of what a customer wanted to spend, he could sell exhibit A with exhibit 1 (fishing reel), if that was all he had in stock, but on balance, as between buying a cheaper rod or cheaper reel, if he were in a position to do so, he would advise one to buy a cheaper rod.

There was additional testimony for defendant from Mr. George W. Thilberg, regional conservation officer of Fish & Wild Life for the New York State Conservation Department, and Mr. Stephen C. Netherby, assistant editor of Field & Stream Magazine (exhibit C), the qualifications of all of defendant's witnesses having been conceded. The testimony of Messrs. Thilberg and Netherby materially and relevantly corroborates the testimony of Mr. Wolff with respect to the sale and use of articles of the kind imported, namely, exhibit 1, for sport fishing.

Both sides, in their briefs, cite the legislative history of schedule 7, part 5, subpart B (fishing tackle), subpart D (sporting equipment), subpart E (toys),[4] and the application of the "junior edition" principle relied on in *New York Merchandise Co., Inc.* v. *United States*, 62 Cust. Ct. 38, C.D. 3671, 294 F. Supp. 971 (1969),[5] appeal dismissed, to the facts in this case. However, as the "junior edition" principle cannot serve to sustain plaintiff's claim but only to negative it, if applicable, I eschew debate of the "junior edition" principle, in view of the result I have reached holding that plaintiff has failed to overcome the pre-

---

[4] Tariff Classification Study, Schedule 7, pages 273, 279, and 288; Tariff Classification Study, First Supplemental Report, page 80.

[5] The articles in *New York Merchandise* were vinyl junior baseball gloves classified by customs as toys under TSUS item 737.90, and *inter alia* claimed to be properly classifiable as baseball equipment under TSUS item 734.55. The gloves were established to be suitable

sumption of correctness attaching to the customs classification of the imported articles as fishing reels dutiable under TSUS item 731.20.[6]

The evidence most favorable to plaintiff is to the effect that plaintiff includes the fishing reels in a fishing kit which it sells nationally to toy stores and department stores and that such stores sell the fishing kit in their toy section; that in Mr. Rubin's experience the fishing reels were used with the fishing kit chiefly by children in play fishing and not sport fishing, and that the imported fishing reels are not of the quality of fishing reels having gears and use in sport fishing.

However, not every article sold by a toy store or in the toy department of a store is necessarily a toy for tariff purposes. See, *United States* v. *Bernard, Judae & Co. et al.* 13 Ct. Cust. Appls. 306, 308, T.D. 41230 (1925). Plaintiff's testimony that the imported articles are chiefly used by children in play fishing, as opposed to sport fishing, is rebutted by the testimony of defendant's well qualified witnesses who testified to the sale of articles of the quality of the imported fishing reels (exhibit 1), as fishing reels used, albeit perhaps, more by children than by adults, in sport fishing.

Plaintiff's evidence that the imported fishing reels are included in a fishing kit sold nationally must be weighed to establish that, in the condition imported, the fishing reels are intended to be used as part of a fishing kit. Cf. *Charles Garcia & Co., Inc.* v. *United States*, 45 CCPA 1, C.A.D. 663 (1957). There is no evidence that the imported fishing reels are themselves toys, aside from their use with a fishing kit of sorts. The fishing kit is not in exidence. Assuming, without deciding, that the fishing kit is a toy, the imported fishing reels imported separately are at best a part of the fishing kit and, therefore, separately dutiable. *Charles Garcia & Co., Inc.* v. *United States, supra.* Subpart E, headnote 1, as noted earlier, provides as follows:

> 1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules * * *.[7]

and chiefly used by children, particularly below the age of eight in a regular or organized game of baseball. Following the principle of numerous cited cases, "that a 'junior edition' of a larger, more expensive article is classifiable under the same provision as the more expensive article, if the cheaper article performs the same function on a smaller scale" (*New York Merchandise*, at page 42), and concluding that the TSUS legislative history (cited by both sides here) indicated an intent to carry over the "junior edition" principle into the tariff classification of sports equipment, as opposed to toys, this court held the vinyl baseball gloves properly classifiable not as toys, but under TSUS item 734.55 as baseball equipment.

[6] Customs is presumed to have correctly found all the facts necessary to support the classification as fishing reels. *Novelty Import Co., Inc.* v. *United States*, 53 CCPA 28, C.A.D. 872 (1966).

[7] Cf. *United States* v. *Topps Chewing Gum, Inc.*, 58 CCPA 157, 158, C.A.D. 1022, 440 F. 2d 1384 (1971).

Parts of toys it will be observed are excepted from the headnote and are, therefore, not excluded from specific provisions elsewhere in TSUS.[8]

Fishing reels, separately imported, are specifically provided for in TSUS item 731.20. Plaintiff, in short, however, has placed almost entire reliance on the use by children and the "amusement" aspect of the imported fishing reels in an effort to support their claimed classification as "toys". In doing so, it has failed to negate the presumption and supporting evidence that, as a matter of fact, the imported articles are fishing reels; that, imported separately, the fishing reels are solely or chiefly used as a part of an article; and that fishing reels are specifically provided for under TSUS item 731.20.

The claim for classification as toys or parts of toys under TSUS item 737.90 is overruled.

Judgment will be entered accordingly.

---

[8] The tariff classification of parts of toys is, therefore, subject to the statutory rule that: a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, *but does not prevail over a specific provision for such part.* [Emphasis added. TSUS General Headnotes and Rules of Interpretation, 10(ij).]