UNITED STATES *v.* HARRY GRUNBERG (No. 4726)[1]

United States Court of Customs and Patent Appeals, April 15, 1953

*Charles J. Wagner,* Acting Assistant Attorney General (*Arthur R. Martaccia* and *Alfred A. Taylor, Jr.,* special attorneys, of counsel), for the United States.

*Lamb & Lerch* (*David A. Golden* of counsel), *amicus curiae.*

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for appellee.

[Oral argument February 12, 1953, by Mr. Martaccia, Mr. Golden, and Mr. Schwartz]

Before GARRETT, Chief Judge, and O'CONNELL, WORLEY, and JACKSON (retired), Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, pursuant to its decision, C. D. 1376, sustaining protests of the appellee in which it was claimed that the merchandise consisting of sponge rubber balls imported from England was properly dutiable at 30 per centum ad valorem under provisions of paragraph 1502 of the Tariff Act of 1930 instead of toys as classified by the collector at 70 per centum ad valorem under paragraph 1513 of the

[1] C. A. D. 520.

Act. The pertinent portions of the involved paragraphs read as follows:

Tariff Act of 1930:

Par. 1513. * * * and all other toys, * * * not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

Par. 1502. * * * all other balls, of whatever material composed, finished or unfinished, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), and all clubs, rackets, bats, golf tees, and other equipment, such as is ordinarily used in conjunction therewith, all the foregoing, not specially provided for, 30 per centum ad valorem; * * *

The merchandise consists of dark red sponge rubber balls, 2½ inches in diameter.

The case was tried in the city of New York. Two witnesses appeared on behalf of appellee and six for the Government. One of appellee's witnesses was the importer and the other a high school student. Four of the Government's witnesses were domestic manufacturers of merchandise similar to that imported. Two of the Government's witnesses were recreation and playground directors.

It appears from the testimony of the importer that the involved merchandise was the first order of that type which he imported. He testified that he had made but a single importation of the merchandise which consisted of "144 dozen and 7 gross and 1 gross" but that his sales were small and disappointing. He stated that his sales were made to jobbers and that he had seen balls similar to those imported used in playgrounds, school grounds, and in the streets. He mentioned Lincoln Park, Prospect Park school yards, and streets. He said that balls of the kind imported were used mostly by adults or by students on high school grounds playing with them by throwing and catching. He further testified that he saw some people using a wooden stick to strike the ball and in his opinion the students he saw ranged from 16 to 20 years of age. He had never seen children playing with 2½ inch sponge rubber balls but did see them with balls of the same size which he did not examine. The witness admitted that once or twice he saw children of about the age of six or seven throwing and catching balls similar to those here involved. His testimony failed to prove or tend to prove that the imported balls were primarily designed for use in physical exercise as claimed in the protests.

The high school student was 17 years of age and he stated that he had seen balls similar to those imported in use at several playgrounds by boys of some 16 to 19 years of age. He stated they played games with the ball; all physical games, such as paddle tennis, box ball, and stick ball. The witness had never seen "any kids use a ball like this."

There is nothing in the testimony of that witness to indicate that the imported merchandise was primarily designed for use in physical exercise.

The witnesses for the Government connected with domestic manufacture of similar merchandise, without exception, testified that they manufactured and sold many thousands of dollars worth of balls similar to those imported. They were sold to variety stores such as Woolworth, Kresge, and McCrory, and stores of similar character. Those witnesses testified that the balls such as those imported are chiefly used by children and that they are sold as toys and used as toys.

One of the playground directors who is in charge of recreation and planned programs for the Hillside Homes housing project stated that 1,800 children play in the playground with an attendance of about 300 a day. The witness had seen balls similar to those imported, had handled them and observed the use of them which she said was bouncing, rolling, hitting against a wall, and playing catch. She stated that occasionally adults play in the playground and that the range age of those she had observed using similar merchandise to that here involved was between 8 and 13 and among them were girls from 9 to 13 playing with the balls by bouncing them and using them in other games.

The other playground director was also employed by the Hillside Housing Corporation and under the direction of the previous witness. His duties were general supervision of the playground and supervisor to athletic and social clubs. He stated he had observed merchandise similar to that imported used by girls bouncing the ball and reciting poems at the same time and twirling their legs around the ball and catching it. He had also seen it used by boys and girls alike where they placed a coin or bottle top on the floor and tried to hit it with the ball. The age range of those using the ball he testified as being from 6 to 12.

As observed by the trial court, the testimony of the parties is conflicting. The court properly observed that the burden was on appellee to overcome the presumption of correctness attaching to the collector's classification and to establish affirmatively that the balls were primarily designed for use in physical exercise. The court further properly stated that the determining test is not whether the balls were chiefly used by children but the purpose for which they were used and, in that connection, it stated that in order to sustain the classification as toys the balls must be found to be chiefly used for the amusement of children.

In its decision the court described the ball as being quite heavy and noted that samples are sound witnesses. It also stated therein that children have been defined as those under the age of 14 for boys and

12 for girls. It was likewise clearly set out that there is no definite age at which children lose their interest in toys but that such interest is to a great degree confined to the very young, citing *United States* v. *Frederick Warne & Co.*, 18 C. C. P. A. (Customs) 380, T. D. 44638. Of course, that case concerns books and we do not agree with the trial court that it can apply with equal force to the facts in the present case.

We cannot agree that the 2½ inch sponge rubber balls are quite heavy as held by the court below. As a matter of fact, they are less than 3 ounces in weight. Other cases were cited by the court in its decision which we do not deem it necessary in view of our conclusion to discuss.

The court below seemed to base its conclusion more upon the "heavy weight" of the ball than on the testimonial record.

We agree with what was said in the case of *United States* v. *F. W. Woolworth Co.*, 24 C. C. P. A. (Customs) 338, T. D. 48770, but it has been amply proved in the record that according to the great preponderance of the evidence, the imported articles are chiefly used for the amusement of children.

The testimony of the Government witnesses is not in the nature of opinion but as we view the record it is competent direct evidence.

Furthermore, we are convinced that the appellee did not sustain his burden of proof which is not only to prove by preponderance of the evidence that the classification made by the collector is incorrect but that the claimed classification is correct.

We find nothing in the record which even faintly hints at the claim that the imported merchandise was "primarily designed for use in physical exercise." Therefore, the judgment of the United States Customs Court is *reversed*.

JACKSON, J., retired, recalled to participate herein in place of COLE, J.