58 CCPA

**The UNITED STATES, Appellant,**

v.

**TOPPS CHEWING GUM, INC., Appellee.**

**No. 5397.**

United States Court of Customs
and Patent Appeals.

May 13, 1971.

Baldwin, J., concurred in result.

————◆————

L. Patrick Gray III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Michael M. Hunter, New York City, for the United States.

Alan S. Hays, New York City (Cadwalader, Wickersham & Taft), New York City, attorney of record, for appellee; George D. Reycraft, New York City, of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and JONES, Judge, United States Court of Claims, sitting by designation.

LANE, Judge.

The United States appeals from the decision and judgment of the First Division of the Customs Court in Topps Chewing Gum, Inc. v. United States, 63 Cust.Ct. 431, C.D. 3930 (1969), sustaining appellee-importer's protest against the classification of imported merchandise. We reverse.

The merchandise consists of assortments of objects variously labeled as "Wise Guy Buttons," "Smarty Buttons," and "Ugly Buttons." Each of the objects consists of a round metal disk about two inches in diameter and having a metal pin attached to the back. Humorous sayings and/or designs are printed in color on the front of the objects. Examples of the sayings are "I FOUND MY IDEAL—ME" and "SUPPORT SLOPPINESS." One of the designs is of a one-eyed monster and includes the words "HERE'S LOOKING AT YOU."

The collector classified these objects as toys not specially provided for, under item 737.90 of the Tariff Schedules of the United States (TSUS), and assessed duty at 35% ad valorem.

The Customs Court ruled that appellee had established (1) that the objects were not toys within the meaning of TSUS and (2) that they were properly classifiable under TSUS item 745.08 as "buttons of metal," dutiable at 10% ad valorem. Since we conclude that the court below erred as to the first matter, we need not discuss the second.

The term "toy" is defined in the tariff schedules as "any article chiefly used for the amusement of children or adults." In interpreting and applying this provision, the courts are precluded from entertaining any considerations of relative specificity with regard to any provisions outside schedule 7, part 5, subpart E, in which the "toys" item ap-

pears. This preclusion arises from headnote 1 to that subpart, which provides:

The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules * * *.

Thus, the determinative issue in this case is whether the imported objects fit the description "article[s] chiefly used for the amusement of children or adults." Furthermore, since the objects at bar are clearly "articles," and since "children or adults" apparently includes everyone, the issue boils down to whether or not the chief purpose of the objects at the time of importation was "amusement."

The Customs Court summed up the evidence introduced at trial on the point in issue. 63 Cust.Ct. at 435–436. We paraphrase that portion of the court's opinion:

Examination of the sample importations indicates that they are designed to be worn rather than played with.

The testimony clearly shows that they are chiefly used for wearing. Children who bought the buttons in test marketing were generally between the ages of 9 and 14. They would open the package, look at the button, show it to a friend and then put it on.

A psychologist called by the importer testified that from his research the buttons' appeal is to pre-adolescent children who, when they obtained a button, would read the saying on it, smile or frown, and then put it on. He opined that the behavioral factors motivating use of the buttons were attention-getting and communication.

A psychologist called by the government stated that his observations led him to conclude that only a minority of children wore the buttons they purchased and that he had observed other uses, such as mounting on bulletin boards. He believed that self-expression was not the motivation behind the purchase, but rather the fun and pleasure of collecting.

The four children called as witnesses by the government indicated by the general tenor of their testimony that the principal motivation behind purchasing such buttons was to wear them for fun and not to collect or trade them.

The court concluded from the evidence that the chief use of the imported objects was "wearing." We have no quarrel with that conclusion. Where we differ with the court below is in its reasoning that "wearing" and "amusement" are mutually exclusive. The court reached this result through an unduly narrow construction of the term "amusement." After noting that prior to the enactment of the TSUS a "toy" was defined as a child's plaything, the court cited Wilson's Customs Clearance, Inc. v. United States, 59 Cust.Ct. 36, C.D. 3061 (1967), for the proposition that the TSUS removed the limitation regarding the users' age but left the requirement that the object be a plaything. We think this conclusion is unsupported by the wording of the TSUS or by case authority. In the *Wilson's* case the court did not hold that to be a toy an object had to *be* a plaything, but that the "character of amusement involved was that derived from an item which is essentially a plaything." *Id.* at 39. The court thus stressed the quality of mind or emotion induced by the object as controlling, and we think that is the best approach to interpreting the TSUS definition. If the purpose of an object is to give the same kind of enjoyment as playthings give, its purpose is amusement, whether the object is to be manually manipulated, used in a game, or, as here, worn. We think the evidence is clear that the fun children derive from wearing the imported buttons is essentially the same kind of frivolous enjoyment they would derive from objects which we commonly think of as toys. Accordingly, we find that the importer failed to establish that the chief use of the imported buttons was other than

amusement. The presumption of correctness of the collector's classification was therefore not overcome.

The judgment is reversed.

Reversed.

BALDWIN, J., concurs in the result.