**Slip Op. 05-120**

## UNITED STATES COURT OF INTERNATIONAL TRADE

PROCESSED PLASTIC COMPANY,       :

                *Plaintiff,*    :

         v.             :       Court No. 00-09-00458

UNITED STATES,             :

                *Defendant.*   :

[Defendant's motion for summary judgment granted.]

Decided: September 6, 2005

Stack & Filpi Chartered (Paul F. Stack and Cori A. Szczucki), for Plaintiff.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (James A. Curley); Michael W. Heydrich, Office of the Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, Of Counsel; for Defendant.

## OPINION

RIDGWAY, Judge:

At issue in this action is the decision of the U.S. Customs Service ("Customs")[1] denying the protest filed by plaintiff Processed Plastic concerning the tariff classification of plastic children's backpacks and beach bags that it imported from China.

---

[1]Since the events at issue here, the U.S. Customs Service has been renamed the Bureau of Customs and Border Protection of the U.S. Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat. 2135, 2308); Reorganization Plan for the Department of Homeland Security, H.R. Doc. No. 108-32 (2003).

The Government contends that Customs properly classified the backpacks and beach bags as "[t]ravel, sports and similar bags . . . [o]ther," under subheading 4202.92.45 of the Harmonized Tariff Schedule of the United States ("HTSUS") (1999), dutiable at the rate of 20% *ad valorem*.[2] *See generally* Defendant's Brief in Support of its Motion for Summary Judgment ("Def.'s Brief"); Defendant's Brief in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Reply Brief"). Processed Plastic asserts that the merchandise instead should be classified as "[o]ther toys, put up in sets or outfits, and parts and accessories thereof," under subheading 9503.70.00 of the HTSUS, duty-free.[3] *See generally* Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Response Brief").

---

[2]In its entirety, subheading 4202.92.45 reads:

> Trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper . . . Other . . . With outer surface of sheeting of plastic or of textile materials: Travel, sports and similar bags . . . Other.

All references to the HTSUS herein are to the 1999 version.

[3]In its entirety, subheading 9503.70.00 covers: "Other toys; reduced-size ("scale") models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof: Other toys, put up in sets or outfits, and parts and accessories thereof."

Pending before the Court is the Government's motion for summary judgment.[4] Processed Plastic opposes the motion, claiming that disputed issues of material fact exist, necessitating a trial.

As discussed more fully below, however, this matter is ripe for summary judgment. Further, the merchandise at issue is properly classified as "[t]ravel, sports and similar bags . . . [o]ther" under subheading 4202.92.45 of the HTSUS. Customs' classification is therefore sustained, and the Government's motion for summary judgment is granted.

## I. **Applicable Standards**

Customs classification decisions are reviewed through a two-step analysis – first, construing the relevant tariff headings (a question of law); and, second, determining under which of those headings the merchandise at issue is properly classified (a question of fact). Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (*citing* Universal Elecs., Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997)).

Under USCIT Rule 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to . . . judgment as a matter of law." USCIT R. 56(c). Summary judgment thus may be appropriate in a customs classification case "when there is no genuine dispute as to the underlying factual issue of what

_____

[4]Jurisdiction lies under 28 U.S.C. § 1581(a) (2000). Customs classification decisions are subject to *de novo* review pursuant to 28 U.S.C. § 2640.

exactly the merchandise is." Bausch & Lomb, 148 F.3d at 1365 (citation omitted).[5]  Indeed, the

Court of Appeals has hailed summary judgment as a "salutary procedure . . . to avoid unnecessary

expense to the parties and wasteful utilization of the jury process and judicial resources." Barmag

Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 835 (Fed. Cir. 1984).

Where a party has filed a properly-supported motion for summary judgment in accordance

with Rule 56, the non-movant bears the burden of coming forward with "'*specific facts* showing that

there is a genuine issue for trial.'"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)

(emphasis added) (*quoting* First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288

(1968)).  *See also* Chem. Eng. Corp. v. Essef Indus., Inc., 795 F.2d 1565, 1571 (Fed. Cir. 1986)

(same); USCIT R. 56(e).

To be sure, "the judge's function" at the summary judgment stage "is not himself to weigh

the evidence and determine the truth of the matter." Anderson v. Liberty Lobby, 477 U.S. at 249.

Further, "the established facts, as well as any inferences of fact drawn from such facts, must be

viewed in a light most favorable to the opposing party." Barmag, 731 F.2d at 836 (*citing* United

States v. Diebold, 369 U.S. 654 (1962)).  However, "the court may not simply accept a party's

statement that a fact is challenged. . . . The party opposing the motion must point to an evidentiary

conflict created on the record at least by a counter statement of a fact or facts *set forth in detail* in

---

[5]Pursuant to 28 U.S.C. § 2639(a)(1), Customs' classification is presumed correct.  However, that "presumption of correctness" attaches only to Customs' factual determinations.  The presumption thus has no relevance at this stage of the proceedings, because summary judgment may be entered only if there is no genuine dispute as to any material fact – and, if there is no factual dispute, Customs does not need the benefit of any presumption.  *See* Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995).

an affidavit by a knowledgeable affiant." Barmag, 731 F.2d at 835-36 (emphasis added) (citation omitted).

Thus, "[m]ere conclusory assertions do not raise a *genuine* issue of fact." Pure Gold, Inc. v. Syntex, 739 F.2d 624, 627 (Fed. Cir. 1984). And "[a] non-movant runs the risk of a grant of summary judgment by failing to disclose the evidentiary basis for its claim." Pure Gold, 739 F.2d at 627 (citation omitted).

Moreover, a factual dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, 477 U.S. at 248. The fact that "some evidence has been introduced" is not sufficient – by itself – to create a genuine issue of material fact. Anderson v. Liberty Lobby, 477 U.S. at 251 (*quoting* Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). Further, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, 477 U.S. at 249-50 (internal citations omitted). Thus, at the summary judgment stage, the question to be answered is "whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. at 250.

An extension of this rule is that a moving party is entitled to summary judgment if it can show that the nonmoving party has failed to established an essential element of its claim. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477

U.S. at 322-23.  In determining materiality, "the substantive law will identify which facts are material." Anderson v. Liberty Lobby, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. (citations omitted).

## II.  **Background**

The merchandise at issue in this action includes three items – identified in import documents as the "Barbie backpack," the "Pooh backpack," and the "Barbie beach bag" – imported into the United States from China in 16 separate entries between February and May 1999.

Samples of the backpacks and beach bags are in evidence.  The basic physical characteristics of the merchandise are therefore not in dispute.  *See* Def.'s Exhs. A, B (samples of Pooh and Barbie backpacks); Def.'s Exh. C (sample of Barbie beach bag).  Most importantly (for purposes of this case), as discussed in greater detail below, it is undisputed that the imported merchandise is carried by children to transport lightweight personal effects, such as the domestically-manufactured plastic beach toys with which the backpacks and beach bag are packaged for retail sale.

### A.  **The Barbie and Pooh Backpacks**

The overall shape and construction of the Barbie backpack and the Pooh backpack are identical.  The backpacks are rectangular, consisting of a top panel, front and back panels, and two side panels, all made of polyvinyl chloride ("PVC") plastic sheeting.  The front panels are transparent, so that any objects placed inside the backpacks are clearly visible.  In contrast, the top, side, and back panels are made of colored PVC plastic sheeting – pink for the Barbie backpack, and

blue for the Pooh backpack. The backpacks have plastic mesh bottoms, which are double-stitched to the front, back, and side panels. The seam formed between the mesh bottom and those four panels is reinforced with a one-inch strip of PVC sheeting.

Each backpack is approximately 11 inches high, nine inches wide, and three-and-a-half inches deep. (In other words, it is roughly the same size as a two-ream stack of standard printer paper.) Two straps made of woven nylon webbing are attached to the back panel at the top and the bottom, and are designed so that the backpack can be worn on a child's back. The length of the straps can be adjusted by means of buckles, to tailor the fit of the backpack to the individual child.

In addition, each of the backpacks closes with a zipper – with two zipper pulls – which runs all the way from one lower corner of the backpack to the other, in both directions. This design affords maximum access to any toys or other items that a child carries or stores in the backpack. To further facilitate its use, there is a loop in the middle of the top of the back panel, so that the backpack can be hung on a hook for convenience.

The only differences between the two backpacks are their respective color schemes and imprinted images. The clear front panel of the Barbie backpack features a small (two-by-three inch) image of Barbie (who is pictured from the torso up, sporting a sun hat). The Pooh backpack features a two-and-a-half inch tall image of Winnie the Pooh on the front panel, as well as slightly larger images of Pooh (and Tigger too – ) on the side panels. The side and top panels of the Pooh backpack also feature very small, faint sand pail-and-shovel designs.

## B. **The Barbie Beach Bag**

Much like the backpacks, the Barbie beach bag is made of PVC plastic sheeting, with a circular plastic mesh bottom. The fronts of the Barbie beach bag and the Barbie backpack both feature the same image of Barbie in a sunhat. Unlike the Barbie backpack, however, the beach bag is a sling-style, cylindrical-shaped bag of a top-opening duffel type – approximately 12 inches high and nine inches in diameter – and is made almost entirely of *clear* plastic (except for the plastic mesh bottom). As with the backpacks, objects carried or stored inside the beach bag are thus clearly visible.

The beach bag's clear plastic sheeting is joined at the bottom to a one-inch wide ring of pink plastic sheeting, which forms a circle around the outside edge of the mesh bottom of the bag. Plastic piping and a one-inch strip of PVC sheeting reinforce the double-stitched seam between the bottom and the rest of the bag. A one-inch wide "collar" made of pink plastic is stitched all around the circular top of the beach bag.

In addition, two braided cords are attached to the bottom of the beach bag by a metal ring and a woven nylon webbing loop, and threaded through metal grommet-reinforced holes all around the top of the bag. The braided cords serve a dual purpose of forming both a double cord strap and a drawstring-style closure to secure the contents of the beach bag. The design of the double-braided cord straps allows the beach bag to be carried either as a backpack or slung over a child's shoulder.

### C.  **The Importation and Retail Sale of the Merchandise**

The backpacks and beach bags are imported by themselves – empty – from China.  After the merchandise is imported, various domestically-manufactured plastic beach toys are inserted into the backpacks and beach bags, which are then repackaged individually for retail sale.

Processed Plastic's advertisements depict children carrying the backpacks on their backs.  Other advertisements show the beach bag slung over a little girl's shoulder, via the double-braided shoulder strap.  All the advertisements note that the backpacks and beach bags are sold at retail with a sand pail, shovel, molds, a sieve, and other sand toys inside.  Declaration of Kevin P. Gorman ("Gorman Decl."), Atts. 1-5 (advertisements for Barbie and Pooh backpacks, and Barbie beach bag).

### III.  **Analysis**

Emphasizing Note 1(1) to Chapter 42 of the HTSUS (which excludes from the scope of that chapter goods that are classifiable under chapter 95),[6] Processed Plastic argues – in short – that the goods here are not "backpacks" (or, in the case of the beach bags, "similar containers") *because* they

---

[6]Note 1 to chapter 42 provides, in relevant part:  "This chapter does not cover . . . (1) articles of chapter 95 . . . ."

Although it cites no authority for the proposition, Processed Plastic asserts that "[t]his note clearly contemplates the scenario[] present in this case."  Pl.'s Response Brief at 5.  In fact, the Court has identified only one case in which Note 1(1) has been invoked to classify as a "toy" under chapter 95 merchandise which would otherwise have been classified under *heading 4202* – the specific part of chapter 42 that is at issue here.  And that case is nothing like this one.  *See* HQ 958180 (Jan. 18, 1996) (classifying under heading 9503 "small, sturdy," *miniature* replicas of vintage luggage which are "marketed as accessories to dolls in 'The American Girls Collection,' a line of historically authentic books, dolls, and related accessories" very popular with young girls in this country).

are "toys" under heading 9503.[7]  *See*, *e.g.*, Pl.'s Response Brief at 4-5, 12-13.[8]  Distilled to its

essence, Processed Plastic's affirmative case that the merchandise at issue is a "toy" consists of two

types of evidence:  (1) evidence as to the asserted play, amusement, or diversion value of the goods

(hereinafter, "play value"), and (2) evidence as to how the goods are advertised, marketed,

merchandised, displayed, and sold.

Processed Plastic's evidence and arguments are, however, insufficient to establish the

existence of a genuine issue of material fact.  Nor do they cast doubt on Customs' classification of

the backpacks and beach bag under heading 4202 of the HTSUS.  As detailed below, Processed

Plastic's merchandise is properly classified under subheading 4202.92.45.

---

[7]As Processed Plastic observes, "[a]lthough the term 'toy' is not defined [in the HTSUS], the courts have defined a toy as an object whose principal use is *amusement*, *diversion* or *play*."  *See* Pl.'s Response Brief at 5 (emphasis added) (*citing* Minnetonka Brands, Inc. v. United States, 24 CIT 645, 650-51, 110 F. Supp. 2d 1020, 1026 (2000); Ero Indus., Inc. v. United States, 24 CIT 1175, 1180, 118 F. Supp. 2d 1356, 1360 (2000)).  Heading 9503 is thus a "principal use" provision.  *See*, *e.g.*, Ero Indus., 24 CIT at 1180, 118 F. Supp. 2d at 1360 (noting application of Additional U.S. Rule of Interpretation 1(a) to "use" provisions such as heading 9503).  *See also* Pl.'s Response Brief at 13 (noting that "[h]eading 9503 is a use provision.").

"[A]s their names suggest, . . . principal use provisions classify [merchandise] by use." Clarendon Marketing, Inc. v. United States, 144 F.3d 1464, 1467 (Fed. Cir. 1998) (citation omitted). In contrast, "[a]n *eo nomine* classification provision is one which describes [merchandise] by a specific name."  *Id*. (citation omitted).

[8]As the Government succinctly puts it: "The basis of the plaintiff's claim is that the proper classification of the imported merchandise is under subheading 9503.70.00, HTSUS. *See* Complaint ¶ 9.  According to the plaintiff, because the merchandise is classifiable under 9503.70.00, it cannot be classified under subheading 4202.92.45, HTSUS, because Note 1(1) to Chapter 42 precludes such classification."  Def.'s Reply Brief at 8 (citations omitted).

## A.  Processed Plastic's Claim Under Heading 9503

Processed Plastic's chief contention is that summary judgment is inappropriate because, it asserts, the principal use of its merchandise is in dispute.  *See*, *e.g.*, Pl.'s Statement of Material Facts ¶¶ 1 ("The primary use of the imported merchandise is to provide amusement and diversion for children . . ."), 2 ("The imported merchandise was chiefly designed for the amusement and diversion of children.").  However, the evidence that it has proffered is – as a matter of law – insufficient to preclude summary judgment.  Processed Plastic has failed to establish the existence of a dispute of material fact.

Processed Plastic's evidence on "play value" is little more than a series of bald statements along the lines of "the function of [the backpacks and the beach bag] is to provide amusement and diversion for children by giving them a plastic toy that serves as a sand and water sieve and in which they can insert or remove other small toys."  *See* Pl.'s Response to Def.'s Statement of Material Facts ¶¶ 12-13.[9]  However, conclusory assertions such as these cannot suffice to preclude summary

---

[9]As catalogued immediately below, all the statements on which Processed Plastic relies to establish "play value" are broad, formulaic combinations of the same small handful of phrases, variously preceded by a reference to "use," "function," or "design."  But repetition is no substitute for the specificity which is required by USCIT Rule 56(e) and conspicuous by its absence here.

*See* Pl.'s Statement of Facts ¶ 1 ("The primary use of the imported merchandise is to provide amusement and diversion for children by giving them a clear plastic beach toy that can be used as a water and sand sieve and in which they can insert and remove other lightweight toys."); Pl.'s Statement of Facts ¶ 2 ("The imported merchandise was chiefly designed for the amusement and diversion of children."); Declaration of David Bergman ("Bergman Decl.") ¶ 5 ("The merchandise was primarily designed to provide amusement and diversion for children by giving them a clear plastic beach toy which they could use as a sand and water sieve and in which they can insert and remove small, lightweight objects."); Report of Jay Byrd ("Byrd Rept.") ¶ 2.6 ("the primary function of the merchandise at issue is for a child to play with the vinyl beach bag and beach toys near sand and water"); Pl.'s Response to Def.'s Interrog. 14 ("The function of the imported merchandise is to

judgment.  *See generally* Schwarzer, Hirsch & Barrans, <u>The Analysis and Decision of Summary</u>

<u>Judgment Motions</u> at 48 (Federal Judicial Center 1991) ("FJC Monograph").[10]

_____

provide amusement and diversion for children by giving them a clear plastic beach toy in which they can insert and remove other small plastic toys . . . ."); Pl.'s Response to Def.'s Interrog. 19(b) ("The principal use of the imported merchandise is for children's amusement and diversion . . . .").

Citing <u>Ero Industries</u> (and apparently alluding to the Barbie and Pooh images on its own merchandise), Processed Plastic argues in its brief that "the imported merchandise in this case *per se* has amusement value."  Pl.'s Response Brief at 6-8.  However, Processed Plastic's affidavits and other evidence are utterly devoid of any discussion of how the images on the backpacks and beach bag assertedly "create imagery and foster fantasy play."  *Id*. at 8.  Only one of Processed Plastic's witnesses even mentions "fantasy play" – and that reference goes only to one of the three items at issue and is, more importantly, completely conclusory.  *See* Bergman Decl. ¶ 4 (asserting, with no elaboration, that "[t]his advertisement [of the Pooh backpack], and specifically the language, 'a great way to begin your adventure,' clearly illustrates that the bag is designed for the . . . fantasy play of children.").

The mere fact that an article incorporates graphics of popular children's characters does not necessarily make that article a "toy" for tariff purposes.  A child's sweater does not become a "toy" simply because it is decorated with images of Winnie the Pooh or Barbie.  "To classify every eye-catching, child-friendly article as a toy, simply because it enhances a child's imagination, is to unacceptably blur the HTSUS headings defeating their purpose and leading to absurd results." <u>Simon Mktg., Inc. v. United States</u>, No. 00-00332, slip. op. 05-118 at 23 (CIT Sept. 1, 2005).

[10]In cases such as this, litigants claiming a "toy" classification typically proffer specific, detailed testimony or other evidence to establish "play value" – for example, documentation of factors considered in the design process, results of "test marketing," or the testimony of child psychologists or parents describing with particularity the specific ways in which children interact with the asserted "toy."  *See, e.g.*, <u>Minnetonka</u>, 24 CIT 645, 110 F. Supp. 2d 1020 (witnesses included, *inter alia*, mother who testified "that her child carries the merchandise under his arm like a little doll, talks to the goods and makes the goods kiss each other," as well as expert "in the field of semiotics (the study of cultural signs or cultural meaning)"); <u>Dan-Dee Imports, Inc. v. United States</u>, 7 CIT 241 (1984) (importer's evidence included affidavit from mother of two-and-a-half year old girl, detailing little girl's interaction with asserted toy); <u>Creative Playthings v. United States</u>, 80 Cust. Ct. 192 (1978) (importer presented, *inter alia*, testimony of psychologist from Educational Testing Service specializing in "cognitive development and social behavior of young children," who had observed children's use of article in their activities); <u>United States v. Topps Chewing Gum</u>, 58 CCPA 157,  440 F.2d 1384 (1971) (evidence included results of "test marketing" to children;

"It is well settled that 'a conclusory statement on the ultimate issue does not create a *genuine* issue of fact.'" Applied Cos. v. United States, 144 F.3d 1470, 1475 (Fed. Cir. 1998) (*quoting* Imperial Tobacco Ltd. v. Philip Morris, Inc., 899 F.2d 1575, 1581 (Fed. Cir. 1990)).[11]  Instead, a party opposing summary judgment "must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts *set forth in detail* in an affidavit by a knowledgeable affiant.  Mere denials or conclusory statements are insufficient."  Barmag, 731 F.2d at 835-36 (emphasis added).

Thus, for example, where summary judgment was granted in a trademark registration case based in part on a finding that "sweats" is a generic term for fleece sportswear, even a counter-

---

witnesses presented included four children, as well as psychologist who had observed how children, in general, used the article); United States v. Grunberg, 41 CCPA 1 (1953) (witnesses testifying in support of "toy" classification included "recreation and playground directors," who detailed their observations as to specifically how children use article).

Indeed, to survive a motion for summary judgment, Processed Plastic would not only have had to identify "specific facts" to establish the existence of a material dispute warranting a trial; but, in addition, Processed Plastic's evidence would have to clearly distinguish between any "play value" inherent in the imported merchandise here at issue – *i.e.*, the backpacks and beach bag – as opposed to the "play value" of the product as it is sold at retail (where it is prepackaged with an assortment of domestically-manufactured plastic beach toys), or even the "play value" of the beach toys alone. In other words, a trial would be warranted only if Processed Plastic presented evidence of "play value" that was more than merely conclusory, *and* that evidence focused specifically on the intrinsic "play value" of the backpacks or beach bags themselves (*i.e.*, the imported merchandise subject to tariff classification here).

[11]As the Court of Federal Claims has observed, this is indeed a proposition with "an impressive pedigree." *See* Becho, Inc. v. United States, 47 Fed. Cl. 595, 602 n.6 (2000) (collecting authorities). *See also* Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990) (where court of appeals reversed district court's entry of summary judgment, the appellate court erred in "'assuming' that general averments [by a party opposing summary judgment] embrace the 'specific facts' needed to sustain the complaint").

affidavit from the opposing party's president attesting that "sweats" is *not* a generic term "would have availed little." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1564 (Fed. Cir. 1987). Absent the production of additional evidence elaborating on and substantiating that position, summary judgment would have been appropriate in any event. "Mere conclusory statements and denials do not take on dignity by placing them in affidavit form." *Id*. (citations omitted). *See also* Techsearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1372 (Fed. Cir. 2002) (citations omitted) (same); Medical Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1220 (Fed. Cir. 2003) (in contrast to another patent case where summary judgment was properly granted, expert here "did not simply make a conclusory statement that, in his opinion, the claims were invalid. . . . Rather, for each claim limitation, he connected it with disclosures in the prior art that he believed taught each particular limitation.").

Measured against this standard, the conclusory representations of Processed Plastic and its witnesses as to the "play value" of the merchandise – which do little more than parrot the tariff definition of a "toy" – lack the requisite substance and specificity, and are insufficient as a matter of law.[12]

_____

[12]Quite apart from its conclusory nature, Processed Plastic's evidence concerning "play value" is plagued by other infirmities as well.

For example, it is well-established that a party cannot defeat summary judgment with an affidavit that is inconsistent with a prior statement, absent a reasonable explanation for the discrepancy. *See, e.g.*, Applied Cos., 144 F.3d at 1473-75 (summary judgment in favor of government not precluded by declaration of government contractor's CFO attesting that company previously effected "set-off" where that statement was "irreconcilable" with company's correspondence with federal government); Sinskey v. Pharmacia Ophthalmics, Inc, 982 F.2d 494, 497-98 (Fed. Cir. 1992) (in assessing existence of genuine issue of fact, court properly disregarded party's declaration which "was in direct conflict" with party's earlier testimony at deposition). *See*

Moreover, because "play value" is the *sine qua non* of a "toy," the lack of any real proof of

"play value" renders immaterial Processed Plastic's remaining assertions of fact concerning its "toy"

claim – specifically, its allegations concerning matters such as the advertising, marketing,

merchandising, display, and sale of the merchandise. *See* Pl.'s Statement of Material Facts ¶ 3

---

*generally* FJC Monograph at 48.

Here, Processed Plastic's current assertions that the backpacks and beach bag are for children's use as "sand and water sieve[s]" are fundamentally inconsistent with its prior statements to the effect that "[t]he bottoms [of the backpacks and the beach bag] . . . are perforated with large holes *for the sole purpose of permitting water to run out*." *See* Plaintiff's Statement in Support of Protest at 3 (emphasis added); *see also* Pl.'s Response to Def.'s Interrog. 15 ("The imported merchandise has a sieve bottom *designed to drain sand and water*") (emphasis added); Byrd Rept. ¶ 2.3 (*quoting* catalog, which describes Pooh backpack as having "*a sieve bottom to drain sand and water*") (emphasis added); Processed Plastic's website (Pl.'s Exh. 8) (promoting Barbie beach bag as having "a sieve bottom *to drain sand and water*") (emphasis added); Pooh Backpack advertisements (Gorman Decl., Atts. 1-3) (Pooh backpack "has a sieve bottom *to drain sand and water*") (emphasis added); Barbie beach bag advertisements (Gorman Decl., Atts. 4-5) (Barbie beach bag "has a sieve bottom *to drain sand and water*") (emphasis added).

Processed Plastic has failed to even acknowledge – much less explain – this discrepancy between its *current* position on this alleged use of the merchandise and its *prior* statements on the subject (which are consistent with the position of the Government here). *See, e.g.*, Gorman Decl. ¶ 8 ("[t]he mesh bottom *allows water and beach sand to drain* from the contents of the backpack and bag") (emphasis added). Accordingly, the discrepancy constitutes a second, independent basis for rejecting Processed Plastic's conclusory assertions that the backpacks and beach bag are designed to be used by children to sift sand and water, and thus have "play value."

Similarly, it is noteworthy that Processed Plastic's advertisements depict children *carrying* the backpacks and beach bag – *not* using them as "sand and water sieve[s]" and *not* "insert[ing] and remov[ing] other lightweight toys." *See, e.g.*, Gorman Decl., Atts. 1-3, 5 (advertisements for Pooh backpack and Barbie beach bag). Processed Plastic's advertisements are thus basically inconsistent with its current assertions that children use the backpacks and beach bag as "sand and water sieve[s]" and as something "in which they can insert and remove other lightweight toys." Again, however, Processed Plastic has offered no explanation.

(asserting that a dispute of material fact exists as to whether "[t]he imported merchandise is located in toy departments of select retail stores").[13]

As a matter of substantive law, evidence as to the advertising, marketing, and merchandising of an article may well be probative; but it is never alone dispositive. *See, e.g.*, S. Y. Rhee Importers

_____

[13]*See* Plaintiff's Statement in Support of Protest at 3 (catalog "demonstrates that the product is promoted and sold solely as a toy"); Pl.'s Response to Def.'s Interrog. 19(b) (merchandise "is advertised as a child's toy"); Bergman Decl. ¶ 4 (advertisements were located in toy catalogs, "surrounded by advertisements for other toys"); Byrd Rept. ¶ 2.4 (merchandise "was located exclusively in the Toy Department of Fred's Stores . . . [so] the merchandise was surrounded only by other toys"); Byrd Rept. ¶ 2.7 ("Fred's also sells backpacks [which] are located . . . in the Stationery and School Supplies Department" of the store); Pl.'s Response to Def.'s Interrog. 19(b) ("the imported merchandise is distributed in retail alongside other toys"); Disney License Agreement ¶ 2.A.(2) (allowing sales only to "toy and seasonal department buyers" for "(1) mass market Retailers . . . , (2) value-oriented department stores . . . , (3) value-oriented specialty stores, (4) toy stores, (5) warehouse clubs, and (6) drug chains"); Mattel License Agreement ¶ G (listing authorized "Channels of Distribution" as "Specialty," "Direct Mail (catalog sales)," "Mid-Tier Store," "Mass Market," "Supermarket," "Drug Store," "Warehouse Club," and "Military Bases"); Pl.'s Response to Def.'s Interrog. 19(b) ("the imported merchandise . . . is recognized in the trade as a toy"); Processed Plastic's website (describing company as "leading domestic manufacturer of plastic toys"); Website of Toy Industry Association, Inc. (listing Processed Plastic as a member of association); Barbie Licensee List (listing Processed Plastic under "Toys/Activities" retailers); Pooh Licensee List (listing Processed Plastic under "Toys & Sporting Goods" retailers); Gorman Decl., Atts. 1-5 (backpack and beach bag advertisements); Attachment to Plaintiff's Statement in Support of Protest (Pooh backpack advertisement); Def.'s Exhs. A, B & G (Pooh and Barbie backpack hangtags); Processed Plastic's website (Barbie backpack advertisement).

It is worth noting, too, that neither Processed Plastic nor the retailers who sell its merchandise to the public promote the backpacks and beach bag separate and apart from the plastic beach toys that are packaged inside them for retail sale. But it is only the imported goods – the *empty* backpacks and beach bag – that are at issue here. Thus, even if its advertisements could be said to have "toy" appeal, Processed Plastic would need to adduce evidence specific to the backpacks and beach bags themselves (distinct from their beach toy contents). Similarly, even assuming the truth of Processed Plastic's claim that the backpacks and beach bag are sold only to toy buyers, and retailed exclusively in toy departments and toy stores, it would not necessarily speak to the marketing, merchandising, display and sale of the imports at issue here – the *empty* backpacks and beach bag.

v. United States, 61 CCPA 2, 4, 486 F.2d 1385, 1387 (1973) ("the manner in which an article is bought and sold is not necessarily determinative of its classification"); Rainin Instrument Co., Inc. v. United States, 27 CIT ____, ____, 288 F. Supp. 2d 1360, 1366 (2003) (and authorities cited there) ("while the marketing of merchandise is a factor to be considered in determining its classification . . . , it is not dispositive") (citations omitted); Minnetonka, 24 CIT at 649, 654, 110 F. Supp. 2d at 1025, 1029 (although "[t]he subject merchandise is sold in the children's toiletries section of stores, rather than the toy section," it is nevertheless properly classified as a toy).

Similarly, as a matter of evidence and procedure, the Supreme Court has emphasized that – where a party fails to establish an essential element of its claim at the summary judgment stage – "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23. *See also* Anderson v. Liberty Lobby, 477 U.S. at 248 ("As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

Since Processed Plastic has failed to come forward with even a scintilla of evidence to support its claims concerning the "play value" of the goods at issue, the other facts that it seeks to establish *vis-a-vis* classification as a "toy" are unavailing. In other words, as a matter of law, absent evidence of "play value," no jury (or other fact-finder) could reasonably find that the backpacks and beach bag are "toys." *See generally* Anderson v. Liberty Lobby, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to

preclude summary judgment; "there must be evidence on which the jury could reasonably find for

the plaintiff.").[14]

_____

[14]As explained in section II.C and elsewhere above, Processed Plastic fills the  backpacks and beach bags with "various lightweight beach toys" after the bags are imported, but before they are distributed for retail sale.  Pointing to that fact, Processed Plastic contends that the merchandise at issue in this action (*i.e.*, the *empty* backpacks and beach bag) should be classified as "other toys, put up in sets," under HTSUS subheading 9503.70.00.  *See* Pl.'s Response Brief at 14-15.

Because Processed Plastic has failed to make its case as to heading 9503, there is no need here to reach the issue of its claimed subheading.  *See* General Rule of Interpretation ("GRI") 1 (requiring the classification of merchandise "according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to [GRIs 2 through 6]"); Orlando Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed. Cir. 1998) ("Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise.") (*citing* GRIs 1 & 6).

But, in any event, Processed Plastic's "sets" argument lacks merit.  "Sets" are defined in the Explanatory Notes to subheading 9503.70.00 as "two or more different types of articles (principally for amusement), put up in the same packing for retail sale without repacking."  *See* Harmonized Commodity Description and Coding System: Explanatory Notes, 9503.70 (2d ed. 1996) ("Explanatory Notes").

Because the merchandise at issue is imported *without* the plastic beach toys, it is not imported in "sets," which – by definition – requires that the imported merchandise consist of "two or more different types of articles."  As a matter of both law and logic, one item does not a set make. *Cf.* M.H. Garvey Co. v. United States, 70 Cust. Ct. 14, 19 (1973) (where customs broker introduced evidence that – after importation – inexpensive fishing reels were packaged with other fishing tackle and "included in a fishing kit sold nationally," court noted: "There is no evidence that the imported fishing reels are themselves toys, aside from their use with a fishing kit of sorts. . . . Assuming, without deciding, that the fishing kit is a toy, the imported fishing reels imported separately are at best a part of the fishing kit and, therefore, separately dutiable.") (citations omitted).

Further, because the plastic beach toys are placed in the imported merchandise after importation, and that product is then placed "within external packaging," the imported merchandise here is "repacked" for retail sale.  Thus, the merchandise at bar also does not fulfill that part of the definition of a "set" which requires that it be "put up in the same packing for retail sale *without repacking*." (Emphasis added.)

Processed Plastic also has failed to establish the existence of a dispute of material fact as to the classification of the Barbie and Pooh backpacks and the Barbie beach bag as "backpacks" and "similar containers" under heading 4202. Apart from its naked assertions that the backpacks and beach bags are principally used for the "amusement and diversion" of children and are assertedly marketed and merchandised as "toys" (discussed above), Processed Plastic raises only two other alleged facts which, it contends, are both material and in dispute, and preclude classification under heading 4202 – specifically, the weight-bearing capacity of the backpacks and the beach bag, and their use to "organize" items. *See* Pl.'s Statement of Material Facts ¶¶ 4 ("The bottom of the imported merchandise will deform if it is forced to hold weight greater than three pounds."), 5 ("The imported merchandise is not capable of organizing items as it consists wholly of one single compartment."). Processed Plastic's position, however, has no merit.

At the summary judgment stage, Processed Plastic's factual assertions must be taken as true. But, even so, any dispute as to the weight-bearing capacity of the backpacks and beach bag simply is not material. Nothing in the language of heading 4202 (or, for that matter, any other provision of the HTSUS) requires that merchandise classified under that heading have any specific weight-bearing capacity.[15] Heading 4202 is an *eo nomine* provision.[16] As a matter of law, such provisions "ordinarily include all forms of the named article." Carl Zeiss, Inc. v. United States, 195 F.3d 1375,

---

[15]Indeed, Processed Plastic's own definition of "backpack" does not require any specific weight-bearing capacity. *See* Pl.'s Response to Def.'s Interrog. 22(a) (defining "backpack" as "a bag with two straps that is used to carry objects *of varying weight* on your back") (emphasis added).

[16]Heading 4202 is an *eo nomine* provision. *See* Def.'s Brief at 13 (*citing* Totes, Inc. v. United States, 69 F.3d 495, 498-99 (Fed. Cir. 1995)); Pl.'s Response Brief at 13 (noting that "[h]eading 4202 is an *eo nomine* provision").

1379 (Fed. Cir. 1999). Heading 4202 thus includes all forms of backpacks and similar containers,

whether they are designed for use by children or adults.[17]

---

[17]There is no need here to go so far as to say that merchandise can be classified under heading 4202 with no regard whatsoever for its weight-bearing capacity.

For purposes of this case, it suffices to note that Processed Plastic obviously concedes that the backpacks and beach bag are capable of carrying children's plastic toys to the beach (which is precisely how the merchandise is marketed). *See, e.g.,* Gorman Decl., Atts. 1-3 (backpack advertisements), 4-5 (beach bag advertisements). Moreover, Processed Plastic acknowledges that the backpacks and beach bag can also be used to carry children's other personal effects as well. *See, e.g.,* Pl.'s Response to Def.'s Statement of Material Facts ¶¶ 12-13 (admitting that backpacks "are used to carry children's toys to the beach," and that beach bag is "used to carry children's toys *and dolls* to the beach" (emphasis added) – even though dolls are not included among the items packaged with the backpacks and beach bag when they are marketed for retail sale). And Processed Plastic further admits that the backpacks and the beach bag can carry at least three pounds – whether a swimming suit, sunglasses, and flip flops, or pajamas for a slumber party/"sleep-over," art supplies, action figures, the ubiquitous "juice boxes," or other lightweight articles. *See, e.g.,* Pl.'s Statement of Material Facts ¶ 4 (asserting that the merchandise cannot "hold weight greater than three pounds").

Indeed, contrary to Processed Plastic's implication, there is logically no point in designing a toddler or young child's backpack or beach bag such that it has the capacity to carry heavy objects, since children of such tender years themselves cannot carry much weight. In many respects, the children's backpacks and beach bag at issue in this case are basically "junior editions" of *adult* backpacks and beach bags. Thus, instructive here is the line of precedent that distinguishes between a non-functional "toy" version of an article and "a 'junior edition' of a larger, more expensive article . . . [which] performs the same function on a smaller scale." New York Merch. Co. v. United States, 62 Cust. Ct. 38, 42, 294 F. Supp. 971, 974 (1969).

In New York Merchandise, for example, vinyl junior baseball gloves were properly classified as baseball equipment rather than "toys," because they were found to be suitable for use in regular or organized games of baseball by children under the age of eight. 62 Cust. Ct. at 44, 294 F. Supp. at 976. In contrast, in Ero Industries, tent-like "playhouses," "play or slumber tents," and "vehicle tents" made of lightweight plastic and designed for children were properly classified as "toys" rather than tents, because – unlike tents – "the imports were neither designed nor constructed for protection against the elements" (and a child's need for protection from the elements is no less than that of an adult). Ero Indus., 24 CIT at 1185-87, 118 F. Supp. 2d at 1364-65. Processed Plastic's reliance on Ero Industries is thus misplaced. *See* Pl.'s Response Brief at 5-8 (discussing Ero Industries). Much like the "junior edition" baseball glove in New York Merchandise, the back packs and beach bag

Processed Plastic fares no better on its claim that – because they consist of single compartments – the backpacks and beach bag cannot be used to "organize" items. Again, even assuming the truth of that assertion, it is not material here.

Just as nothing in the language of the HTSUS requires that merchandise classified under heading 4202 have any specific weight-bearing capacity, so too there is no requirement for multiple compartments. *See* Carl Zeiss, 195 F.3d at 1379 (absent express restrictions, *eo nomine* provisions "ordinarily include all forms of the named article").[18] Indeed, some of the exemplars specifically listed in heading 4202 – shopping bags, for example – typically consist of a single compartment.

Moreover, the capacity to "organize" does not necessarily require multiple compartments. For example, a grocery bag or shopping bag (one of the exemplars listed in heading 4202) allows

in this case fulfill the same functions that backpacks and beach bags do for adults – albeit on a *smaller* scale, and for *much smaller* persons. *See, e.g.*, Def.'s Exh. G (hangtag advising that Pooh backpack is intended for children as young as "36 months"); *see also* section III.B, *infra* (discussing functionality of backpacks and beach bag here at issue).

Processed Plastic's attempts to invoke Carson are also unavailing. Carson, Pirie, Scott & Co. v. United States, 2 Ct. Cust. App. 386 (1911). *See* Pl.'s Response Brief at 7-8. Due to its design and construction, the "Teddy bear" doll/muff in Carson could afford "little if any warmth . . . [to] the hands of a child in cold weather." Accordingly, the muff was properly classified as a toy, rather than as clothing. In contrast, in the case at bar, even Processed Plastic concedes that the backpacks and beach bag are worn by children to carry their personal effects. Indeed, that is precisely how Processed Plastic advertises its merchandise.

[18]Even Processed Plastic doesn't define "backpack" to require multiple compartments. *See* Pl.'s Response to Def.'s Interrog. 22(a) (defining "backpack" as "a bag with two straps that is used to carry objects of varying weight on your back").

a shopper to "organize" purchases for transport – heavier items on the bottom, lighter items on top. Further, simply "containing" items is at least a rudimentary form of "organization."[19]

In any event, the classification of the backpacks and beach bag under heading 4202 does not stand or fall on their use to "organize" items. As discussed further in section III.B below, the "essential purposes" of articles classified under heading 4202 include – in addition to "organizing" – "storing, protecting, and carrying" other articles. SGI, Inc. v. United States, 122 F.3d 1468, 1471 (Fed. Cir. 1997); Totes, 69 F.3d at 498; *see also* Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 n.4 (Fed. Cir. 2003) ("the essential characteristics of the exemplars listed in Heading 4202 are to organize, store, protect and carry various items"). And merchandise can be classified under heading 4202 even if it serves only one of the four stated purposes. Jewelpak Corp. v. United States, 24 CIT 249, 253 n.7, 97 F. Supp. 2d 1192, 1196 n.7 (2000).

The bottom line here is that Processed Plastic does not dispute that the backpacks and beach bag are capable of storing, protecting, and carrying children's personal items. Any dispute as to whether they can also be used to "organize" is therefore immaterial to their classification under heading 4202, and cannot defeat summary judgment. Celotex, 477 U.S. at 322-23; Anderson v. Liberty Lobby, 477 U.S. at 248.

In sum, Processed Plastic has failed to establish the existence of any genuine dispute of material fact to justify a trial in this case. However, that does not end the analysis.

---

[19]Any harried parent of a toddler will attest that beach toys contained in a backpack or beach bag are more "organized" than the same toys scattered all over the living room floor.

## B.  Customs' Classification Under Heading 4202

That Processed Plastic has failed to establish the existence of a dispute of material fact does not necessarily entitle the Government to summary judgment; nor does it necessarily result in the classification of the backpacks and beach bags under subheading 4202.92.45.  Under USCIT Rule 56(c), summary judgment is to be granted only where "there is no genuine issue as to any material fact" *and* "the moving party is entitled to . . . judgment as a matter of law."  Thus, notwithstanding the conclusion in section III.A above, the Government's motion should be granted only if its papers establish all material facts, and if judgment in its favor is appropriate under the circumstances.

Indeed, in a customs classification case such as this, the Court "cannot determine the correct result simply by dismissing the importer's alternative as incorrect."  Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).  Rather, the Court is duty-bound "to find the *correct* result."  *Id*.[20]

Discounting the conclusory assertions of Processed Plastic and its witnesses concerning the principal use of the imported merchandise (for the reasons set forth in section III.A above), a review

---

[20]Neither party addressed the Court's Jarvis Clark obligation.  And the Government virtually ignored Processed Plastic's "toys" argument altogether, focusing its defensive efforts instead on debunking Processed Plastic's claim that the *empty* backpacks and beach bags constitute "sets." *See* Def.'s Brief at 17-21; Def.'s Reply Brief at 2-4.  Much of the Government's argument was – in essence – "*you lose* [on the 'sets' subheading], *therefore I win* [on everything, and Customs' classification is necessarily upheld]."  But that is not a proper paradigm in a classification case.

Thus, although the Government established that the merchandise at issue cannot be classified under subheading 9503.70.00, it did not address whether the goods could be classified elsewhere under heading 9503.  As discussed in section III.A above, however, Processed Plastic failed to make a case for classification under that heading.  Moreover, it appears from the record – and particularly the merchandise samples themselves – that no real case for such a classification *can* be made.  The Government's failure to brief Processed Plastic's asserted claim to classification under heading 9503 (other than the "sets" argument) is therefore of no real consequence here.

of the undisputed evidence in this case – particularly the merchandise samples themselves – compels the conclusion that the backpacks and beach bag are properly classified under subheading 4202.92.45.

## 1. The Barbie and Pooh Backpacks

The Government maintains that Customs properly classified the subject merchandise under HTSUS heading 4202. That heading embraces, among other things, "traveling bags . . . knapsacks and backpacks . . . and similar containers . . . of sheeting of plastics . . . ." Subheading 4202.92.45, in turn, covers "travel, sports and similar bags."[21] Additional U.S. Note 1 to heading 4202 further specifies:

> For the purposes of heading 4202, the expression "*travel, sports and similar bags*" means goods, other than those falling in subheadings 4202.11 through 4202.39, of a kind designed for carrying clothing and other personal effects during travel, including *backpacks* and shopping bags of this heading, but does not include binocular cases, camera cases, musical instrument cases, bottle cases and similar containers.

(Second emphasis added.) Thus, pursuant to the express terms of Additional U.S. Note 1, the phrase "travel . . . and similar bags" means articles "of a kind designed for carrying clothing and other personal effects during travel, *including backpacks*." (Emphasis added.) Backpacks therefore are described *eo nomine* in heading 4202. Carl Zeiss, 195 F.3d at 1379. And, by virtue of Additional U.S. Note 1, backpacks are also included within the provision for "travel . . . and similar bags" found in subheading 4202.92.45.

---

[21]"The expression 'sports bags' includes articles such as golf bags, gym bags, tennis racket carrying bags, ski bags and fishing bags." Explanatory Notes, 42.02.

Dictionaries define the term "backpack" virtually self-referentially – almost as a "pack" carried on one's "back":

> **backpack** n. . . . 1. a load carried on the back (as by knapsack).

Webster's Third New International Dictionary (Unabridged) 159 (1986).

> **backpack** n. A pack or knapsack carried on the back,
> as by campers.

Funk & Wagnalls New International Dictionary 105 (1987).

> **back-pack** A pack carried on the back;

The Oxford English Dictionary 868 (2d ed. 1989).

Applying the commonly-accepted definition of "backpack" to the merchandise at issue, the Barbie and Pooh backpacks are plainly "backpacks" for tariff purposes, and thus properly classifiable under subheading 4202.92.45 pursuant to the express terms of that provision. Indeed, the Barbie and Pooh backpacks are listed as "backpacks" in the relevant entry papers;[22] and even Processed Plastic's own advertisements identify the merchandise as the "Pooh Summer Adventure Beach *Backpack*" and the "Barbie Beach *Backpack*." (Emphasis added.)[23] The hangtag attached to the Pooh backpack similarly identifies it as a "Beach *Backpack*." (Emphasis added.)[24]

---

[22]*See*, *e.g.*, Invoice in Entry No. 0158248-8 under Protest No. 3901-99-101508 (Def.'s Exh. D).

[23]*See* Def.'s Exh. F (advertisement submitted by Processed Plastic with Protest 3901-99-101507); Gorman Decl., Atts. 1-3; Processed Plastic's website (Barbie backpack advertisement).

[24]*See* Def.'s Exh. G (Pooh backpack hangtag). (Note that the hangtag attached to the sample Barbie backpack – Def.'s Exh. B – actually appears to be the hangtag for the Barbie *beach bag*, rather than the Barbie backpack.)

As discussed in section II.A above, an examination of the sample merchandise reveals that the Barbie and Pooh backpacks each have two adjustable shoulder straps, so that the backpacks can be carried on children's backs in transit and used to carry their personal effects. And Processed Plastic's own advertisements depict children *carrying on their backs* the "Pooh Summer Adventure Beach Backpack . . . *loaded with toys* for the beach." (Emphasis added.)[25] (The Barbie backpack – which is of precisely the same design – is obviously used in the same way.)

Moreover, as even Processed Plastic concedes, the backpacks can be used to carry things other than the beach toys with which they are sold – including children's personal effects such as other toys, dolls, a swimsuit or other clothing, sunglasses, or similar items.[26] The Barbie and Pooh backpacks thus fall squarely within the ordinary meaning of "backpack," because they are carried on the back of a child, and are used to transport toys or other personal effects (for example, to the beach).

The Barbie and Pooh backpacks also constitute "backpacks" for tariff purposes because they serve the purposes of *organizing*, *storing*, and *protecting* toys or other personal effects – the other

---

[25]*See* Gorman Decl., Atts. 1-3 (backpack advertisements).

[26]*See*, *e.g.*, Pl.'s Response to Def.'s Statement of Material Facts ¶¶ 12-13 (admitting that backpacks "are used to carry children's toys to the beach," and that beach bag is "used to carry children's toys *and dolls* to the beach" (emphasis added) – even though dolls are not included among the items packaged with the backpacks and beach bag when they are marketed for retail sale); Pl.'s Response to Def.'s Interrog. 19(b) (conceding that merchandise can be used to carry "child sized lightweight object *such as* [*i.e.*, not limited to] the beach toys that are distributed at retail with the product") (emphasis added); Gorman Decl. ¶ 8 ("the backpacks . . . can also be used to carry a child's swimsuit, sunglasses and other personal effects").

three essential characteristics shared by the exemplars listed in heading 4202 of the HTSUS. *See*

Totes, 69 F.3d at 498; SGI, 122 F.3d at 1471; Len-Ron Mfg. Co., 334 F.3d at 1309 n.4.[27]

Like "carrying," the other three essential characteristics are self-evident from even the most

cursory inspection of the sample merchandise. *See* Def.'s Exhs. A, B (samples of Pooh and Barbie

backpacks); *see also* Gorman Decl. ¶ 9 (Barbie and Pooh backpacks are "designed to be carried on

the back of a child for the purpose of *organizing*, *holding*, *storing*, *protecting* and *transporting* toys,

dolls and other personal effects," as evidenced by samples themselves, and by advertisements)

(emphasis added).[28]

As discussed in section III.A, for example, the backpacks serve to "organize" a child's toys

and other personal effects simply by *containing* them. The backpacks may also be used to further

organize objects – for example, by weight or bulk (with larger and heavier items placed in the

bottom, and smaller and lighter items on top). Processed Plastic's own advertisements depict the

backpacks in an upright position with the zipper closed. In those advertisements, the contents of the

backpack are clearly visible through the clear PVC plastic front panel, and can be seen to be "stored"

---

[27]As section III.A notes, merchandise can be classified under heading 4202 even if it serves only one of the four purposes deemed the "essential characteristics." Jewelpak Corp., 24 CIT at 253 n.7, 97 F. Supp. 2d at 1196 n.7.

[28]The Government's affidavit and other evidence are at least more substantive than the conclusory evidence on which Processed Plastic has relied. *Compare* section III.A, *supra* (discussing conclusory nature of Processed Plastic's evidence). Moreover, Processed Plastic's proposed classification – heading 9503 – is a principal use provision, and detailed affidavits or other such evidence would be needed to establish the specifics of the asserted use. In contrast, the Government's claimed classification – heading 4202 – is an *eo nomine* provision. And merchandise samples are available for inspection and comparison to the exemplars identified in the HTSUS. The samples are themselves "potent witnesses," which serve to illustrate, corroborate, and substantiate the statements of the Government's witness. *See*, *e.g.*, Simod Am. Corp. v. United States, 872 F.2d 1572, 1578 (Fed. Cir. 1989) (citations omitted) (samples are potent witnesses).

within the structure of the backpack, in an "organized" fashion. Moreover, the contents of the backpack are obviously "protected" from outside elements by the plastic backpack itself, as well as its zippered closure. *See* Gorman Decl., Atts. 1-3 (backpack advertisements). The Barbie and Pooh backpacks thus not only "carry," but also help "organize," "store," and "protect" children's personal effects.

In sum, the backpacks here at issue are included *eo nomine* under heading 4202, and share the essential characteristics of articles of that heading. Further, because such backpacks are specifically listed in the definition of "travel, sports and similar bags" as that phrase is used in subheading 4202.92.45, they are properly classified thereunder.[29] Customs' determination to that effect must therefore be sustained.

### 2. **The Barbie Beach Bag**

Customs' classification of the Barbie beach bag is equally correct. The beach bag is included under heading 4202 as a "similar container," and is properly classified under subheading 4202.92.45 as a "similar bag."[30]

---

[29]Classification under subheading 4202.92.45 is proper both independently and in comparison with all other alternatives. *See* Jarvis Clark, 733 F.2d at 878. To the extent that the backpacks and beach bag could be said to have any "play value" whatsoever, examination of the merchandise itself (as well as analysis of the other evidence in the case) establishes that its principal use is not amusement, diversion, or play, Processed Plastic's conclusory assertions to the contrary notwithstanding. *See* Def.'s Response to Pl.'s Interrog. 5 ("The imported merchandise . . . is . . . principally used to provide storage, protection, organization, and portability.").

[30]The terms "similar containers" and "similar bags" invoke the principle of statutory construction known as *ejusdem generis*:

Under the rule of *ejusdem generis*, which means "of the same kind," where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified. As

The beach bag shares with the other "containers" listed *eo nomine* in heading 4202 the essential characteristics of organizing, storing, protecting, and carrying various items. *See* Totes, 69 F.3d at 498; SGI, 122 F.3d at 1471; Len-Ron Mfg. Co., 334 F.3d at 1309 n.4.[31] It also has the essential characteristic of the other "bags" listed *eo nomine* under subheading 4202.92.45 – that is, it serves to "carry[ ] clothing and other personal effects during travel." *See* Additional U.S. Note 1 to heading 4202.

The beach bag is large enough to allow several lightweight items to be organized and stored inside it, in much the same manner as the backpacks. *See* Def.'s Exh. C (sample Barbie beach bag). Like the backpacks, the beach bag serves to "organize" a child's toys and other personal effects simply by containing them. And, like the backpacks, the beach bag too may be used to further organize objects (such as by weight or bulk). Indeed, one of Processed Plastic's advertisements depicts the beach bag in an upright position, secured by means of its drawstring closure. In that advertisement, the contents of the beach bag are clearly visible, and can be seen to be "stored" within the structure of the bag, in an "organized" fashion. Moreover, the contents of the beach bag are "protected" from outside elements by the plastic beach bag itself, as well as its drawstring closure. *See* Gorman Decl., Att. 4 (beach bag advertisement).

---

applicable to classification cases, *ejusdem generis* requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* [by name] in order to be classified under the general terms.

Totes, 69 F.3d at 498 (*quoting* Sports Graphics, Inc. v. United States, 24 F.3d 1390, 1392 (Fed. Cir. 1994)).

[31]As explained above, merchandise can be classified under heading 4202 even if it serves only one of the four purposes deemed the "essential characteristics." Jewelpak Corp., 24 CIT at 253 n.7, 97 F. Supp. 2d at 1196 n.7.

Processed Plastic's own advertisements similarly depict the beach bag as a means of "*carrying* clothing and other personal effects during travel." *See* Additional U.S. Note 1 to heading 4202 (emphasis added). The advertisements emphasize that "[t]he Barbie beach bag is beautifully styled for [a] little girl to *carry* her sand toys and Barbie dolls *to the beach*." (Emphasis added.) One advertisement even shows a little girl carrying her personal effects inside the beach bag, with the bag's drawstring strap slung over her shoulder.[32] *See* Gorman Decl., Atts. 4-5 (beach bag advertisements). Processed Plastic's advertisements thus portray the Barbie beach bag as it is used by children to carry their toys, dolls, and other personal effects during travel (for example, to the beach).

In sum, the Barbie beach bag shares the essential characteristics of articles of heading 4202. *See* Gorman Decl. ¶ 10 (Barbie beach bag is "designed to be carried over the shoulder of a child, or on the back of a child, for the purpose of *organizing*, *holding*, *storing*, *protecting* and *transporting* toys, dolls and other personal effects") (emphasis added). Further, just as the Barbie and Pooh backpacks are described by the language of subheading 4202.92.45, the Barbie beach bag is as well. By its terms, that subheading covers "travel, sports and *similar bags*" (emphasis added) – that is, bags "of a kind designed for carrying clothing and other personal effects during travel" – such as the beach bag at issue here. The Barbie beach bag is thus properly classified under subheading 4202.92.45. Customs' determination to that effect therefore must be sustained.

---

[32]As explained in section II.B above, the Barbie beach bag is designed so that it can also be carried on a child's back – like a backpack – by means of its drawstrings. Gorman Decl. ¶¶ 7, 10. (By the same token, people occasionally simply sling backpacks over the shoulders, rather than wearing them on their backs. Examination of the Barbie and Pooh backpacks reveals that they could be slung over a child's shoulder too.)

## IV. **Conclusion**

For all the reasons set forth above, the backpacks and beach bag at issue are properly classified under subheading 4202.92.45 of the HTSUS. Customs' classification of the merchandise is therefore sustained, and the Government's motion for summary judgment is granted.

Judgment will enter accordingly.

_____/s/_____
Delissa A. Ridgway, Judge

Decided:    September 6, 2005
            New York, New York

ERRATA


Processed Plastic Company v. United States, Court No. 00-09-00458, Slip Op. 05-120, dated September 6, 2005.


Page 12:     In the last line of footnote 9, replace "No. 00-00332, slip. Op. 05-118 at 23 (CIT Sept. 1, 2005)." with "29 CIT ____, ____, 2005 WL 2205695 at * 9."

Page 27:     In the first line of footnote 28, insert "somewhat" between "at least" and "more".


September 13, 2005